## MORGAN v. THE STATE.

1. INDICTMENT:　*Obtaining goods under false pretense.*

An indictment charged, in substance, that the prosecutor went from Kentucky to Hot Springs with the fixed purpose of lodging and boarding while there at the same hotel where one Dr. Welsh, an acquaintance of his, boarded, whose society while visiting the Springs, he greatly desired.　That he went to the defendant's hotel for breakfast, and was there informed by the defendant that he well knew Dr. Welsh—that the doctor had been boarding at his hotel for some time, but had left two days before for Eureka Springs.　That by means of said representations he was induced to take board and lodging for one month, at defendant's hotel, and to pay him thirty dollars in advance therefor.　That said representations were willfully false and fraudulent.　That said Welsh had not at any time boarded at defendant's hotel, had not left the city, but was still there and boarding at another hotel.　*Held,* that the indictment charged no criminal offense.

2. • CRIMINAL LAW:　*False pretense:　What is.*

The procuring by a hotel keeper of a guest to board with him, and to pay him money in advance for his board, by telling him falsehoods to induce him to become his guest, is not a false pretense for which he is criminally liable.　A criminal false pretense must be the inducing motive to the obtaining goods by the defendant, and the result must be the obtaining of property.

Morgan v. The State.

APPEAL from *Hot Spring* Circuit Court.
Hon. J. M. SMITH, Special Judge.


*A. Curl,* and *W. J. Hughes* for appellant.

The fact that Fisher was induced to engage board by means of false representations as to a past or existing fact, not having any connection with the hotel or its business, is not a public offense. There must be something obtained feloniously, with intent to cheat or defraud the party from whom it is obtained. (*Gantt's Digest, sec. 1372.*) The ingredients of the offense are obtaining goods or money by false pretenses, and with an intent to defraud. *1 Caldwell (Tenn.), 333.*

The representations were not of such a character as were calculated to induce Fisher to part with his money unconnected with any other consideration. (*12 Ark., 65.*) The statute does not undertake to punish every wrong, or make a public offense of every fraud. (*Ib., 1 Russ and Ryan, 504.*) Nor to punish mere liars. (*28 Am. Dec., 547–8.*) It does not cover all moral delinquencies. *Ib., 549; 6 Mich., 504.*


*Moore,* Attorney General, for the State.

The indictment was good. *Gantt's Digest, sec. 1372.*

The false pretense was "a fraudulent representation both of an existing and past fact by one who knew it not to be true, which was adopted to induce him to whom it was made, to part with something of value." *2 Bish. Cr. Law, sec. 415; 35 Ark., 396.*


EAKIN, J. Morgan was indicted in Garland County, and, upon change of venue to Hot Spring County, was

convicted and sentenced to a year's imprisonment in the penitentiary. This is the indictment:

"The grand jury, etc., * * * accuse M. T. Morgan of the crime of 'false pretenses' committed as follows to wit: 'On the twenty-fifth day of May, 1882, one Walter Fisher, a resident of the State of Kentucky, arrived as a visitor in the city of Hot Springs, with the purpose fixed in his mind of procuring board and lodging at the same hotel, or boarding-house, in said city, where one Dr. John S. Welsh, an acquaintance of the said Fisher, and then in the said city, was boarding; and with such purpose, the said Fisher went to the Gwinn Hotel in said city, of which the said M. T. Morgan was then proprietor, for the purpose of getting breakfast, and ascertaining where in said city the said John S. Welsh was stopping; and while at the said Gwinn Hotel, in the county and State aforesaid, on the said twenty-fifth day of May, 1882, the said M. T. Morgan feloniously, willfully and designedly did falsely represent and pretend to the said Walter Fisher that he, the said Morgan, was acquainted with the said John S. Welsh, and that the said John S. Welsh was not then in the city of Hot Springs; that the said John S. Welsh had boarded with him, the said Morgan, two or three weeks, while in the city of Hot Springs, just prior to that day; and that the said John S. Welsh had left Hot Springs for Eureka Springs a day or two before that day; by means of which said false pretenses and representations so knowingly, feloniously and fraudulently made, the said M. T. Morgan did then and there feloniously induce the said Walter Fisher to engage board and lodging at the Gwinn Hotel for one month, and did feloniously obtain from the said Walter Fisher one piece of United States paper currency, commonly called greenbacks, of the denomination and value of twenty dollars; and one piece of

1. INDICT-
MENT:
Obtaining
goods un-
der false
pretense.

Morgan v. The State.

United States paper currency, commonly called greenbacks, of the denomination and value of ten dollars, of the money of the said Walter Fisher, with the felonious intent to cheat and defraud the said Walter Fisher of the same. Whereas, in truth and in fact, the said M. T. Morgan was not acquainted with the said John S. Welsh, the said John S. Welsh had not at any time boarded with the said M. T. Morgan; the said John S. Welsh had not left the city of Hot Springs for Eureka Springs, a day or two before that day; and the said John S. Welsh was then in the said city of Hot Springs, boarding at a hotel other than the said Gwinn Hotel. Against the peace and dignity of the State of Arkansas.

"'J. B. Wood,<br>"'Prosecuting Attorney.'"

A demurrer to this indictment, and also motions for a new trial and in arrest of judgment, were successively made and overruled. A bill of exceptions was taken, and the defendant appealed.

The transcript is unnecessarily voluminous, including much that might have been left out, and full of tiresome and burdensome repetitions of the same matter. It is safe to say that all that is really necessary might have been embraced in a third of the space. This is a great evil, but without the aid of attorneys in the cases moving to retax costs, or otherwise to correct the abuse, we can only add line upon line and precept upon precept, until the pride of the profession may be aroused to insist upon a better practice. Clerks ought not to inflate cost bills after this fashion.

Considering first the motion in arrest with the demurrer. They are based upon the ground that the facts charged do not disclose an indictable offense.

Section 1372 of Gantt's Digest, so far as applicable to

this case, provides that "every person who, with intent to defraud or cheat another, shall designedly, by color of any false token or writing, or by any other false pretense, * * * obtain from any person any money, personal property, right in action, or other valuable thing or effects whatever, upon conviction thereof, shall be deemed guilty of larceny, and punished accordingly."

Such has been the law of this State since the adoption of the Revised Statutes of 1838.

It was early held, in consonance with English authorities, that there could be no false pretense regarding an intention or future purpose. It could not be applied to a promise to do something, however fraudulent in design or hurtful in effect the promise may have been. The distinction is not based on any idea of difference in degrees of moral turpitude between the two sorts of scoundrelism, but upon the necessity of limiting in some way the broad significance of the words in the statute. To what extent that limitation is to be carried was left uncertain, but it was held in the case now referred to, that it must be a pretense regarding some existing fact or condition, to be felonious. (*McKenzie v. State, 6 Eng., 594.*) It was remarked by Mr. Justice SCOTT delivering the opinion, that it could not be supposed " that the Legislature intended to make every imaginable case of fraud an indictable offense." I may add that if it did so intend, and could enforce the intention, one of two things would result—either we would have a Utopian condition of society, or the revenues of the State would be exhausted in the building and support of penitentiaries. Seriously, constituted as human nature is, in the struggles for wealth, social position, selfish indulgencies, political influence, or for food and clothing, so broad a construction, even within the letter of the statute, would be impractical; or if practical, more barbarous

than the most shocking legislation of the early Puritans. The court in that case declined to make any effort to fix all the limits of the operation of the words of the statute, deeming it safer to leave them to be fixed from time to time in each case, as they might arise. It certainly was a wise precaution, founded upon sound views of practical judicature, and a true forecast of the dangers and abuses to which such statutes may lead. For, in general, I suppose it will be admitted that it is wiser to leave the correction of ordinary cases of fraud and deceit to the civil tribunals, and most especially the equity courts, aided by social ostracism, than to create the temptation to enforce civil claims by the terrors of criminal prosecutions, or to inflict the most crushing punishments and everlasting disgrace for every kind of violation of fair and ingenious dealing. Human nature must be dealt with as found, and wisely corrected and restrained. The question of what would constitute a felonious false pretense had not been raised in the previous case of *The State v. Hand, in 1 Eng., 165*, but the indictment, which passed unchallenged, set up a false pretense of an existing fact of a very material character, upon the belief in which money was advanced. There it was *faith in the fact* which gave the assurance that the money would be returned.

In *Burrow v. The State, 7 Eng., 65*, upon the argument of the present Chief Justice, who was then of counsel for plaintiff in error, the court reasserted the rule in *McKenzie v. State (supra)*, but went still further in the wary policy of guarding against the abuses to which a too literal construction of the words, and too wide a scope of the intention, might lead. In that case there was an actually false misrepresentation of existing facts, or rather a false pretense which did not exist, by which the defendant obtained from one Richard S. Hodge a conveyance of a negro slave

named Bill.   The pretense charged in the indictment was, that Burrow represented to Hodge that certain persons had conspired to seize the slave, by which Hodge would be unjustly and unlawfully deprived of the value, and thereby induced him to convey the slave to Burrow for safe keeping, with the felonious intent to cheat and defraud him, and that the representations were untrue, and Burrow knew it.   The court conceded that this count was not liable to the objection that the pretenses were not regarding existing facts.   There was no question, either, but that the pretenses had been the immediate inducement to the conveyance, or had been properly alleged to have been.   The court held this count bad.   Chief Justice JOHNSON, delivering the opinion of the court, said that "it was not the intention of the statute to convert every fraud which might fall within the cognizance of a court of equity into a criminal offense."   In that case it was considered that the representation complained of was not of so definite and plausible a character "as to drive from his propriety a man of ordinary capacity, and to induce him to divest himself of his property."

He said the statute "was designed to extend no further than to embrace such representations as were accompanied with circumstances fitted to deceive a person of common sagacity, and exercising ordinary caution."   Another count in the same indictment was held bad upon the ground that it was not sufficient to charge false pretenses in general terms, but that they should be set out specifically and with strict certainty.   The principles of construction were substantially reannounced in *State v. Vandermark*, *35 Ark.*, *396*, and supported by authorities.   Upon the authority of Mr. Bishop, Justice HARRISON in that case said the representation must be of such a nature as to induce the person to whom it is made to part with something of value.

In the subsequent case of *J. Johnson v. The State, 36
Ark., 242,* which was a case of obtaining goods on the
false pretense of having been sent for them, Mr. Justice
HARRISON, delivering the opinion of the court, somewhat
modified the doctrine laid down by Chief Justice JOHN-
SON in *Burrow v. The State (supra),* and announced that it
was not necessary that the pretense should be such as is
calculated to deceive a person of ordinary prudence or
caution, but that it would be sufficient if the person were
actually deceived or defrauded. Evidently there are
shades of distinction on this point, and neither position
can be followed to the extreme limits of its logical conse-
quences.

1. FALSE
PRETENSE:

Inducing
motive.

Without pausing to discuss the statutes of England and
of other States of a similar character, which all seem
pretty much in accord with each other, it is only necessary
for the purposes of this case to say that the false pretenses
must be the "*inducing motive* to the obtaining of the goods
by the defendant."

In some States it is held that they must have been the
*decisive* cause of the transfer, whilst in others it is suffi-
cient if they have materially contributed with other mo-
tives to induce it. Acting upon the former caution of this
court, and laying down nothing which this case does not
require for its decision, leaving other points to be settled
and determined as they arise, we proceed to examine this
indictment in the light of our past decisions.

The false pretenses are all with regard to the matter of
Welsh having been an acquaintance of the landlord, and a
guest of the Gwinn Hotel whilst in town, and having left
for Eureka. They were damning falsehoods, altogether
unworthy of a respectable hotel keeper. The object of
them, however, was not to get Fisher to pay him money
because of the facts represented. It is not like the case

where one would go to another and say, for instance, "your family is suffering at home, and I am sent to you for money to relieve them," when that is false. Then the money is given because of the actual pretense. Was there any reason in the nature of things why Fisher should give money to defendant because he knew Welsh, and Welsh had patronized his house, and had then gone to Eureka? It is not pretended that there was, or that Fisher had been himself benefited by the conduct of the defendant towards Welsh, or would be benefited by Welsh's presence. It would simply have gratified his taste and sentiment to be with Welsh. No injury was alleged to have been done to him by not getting at the same hotel with Welsh. Evidently he gave no money or property to defendant upon account of the false representations. They induced him only to make a contract for board there. But of what did that defraud him? Only of the sentimental gratification (from all the indictment shows) of being with his friend Welsh. But the result of a felonious false pretense must be to obtain property.

*Result must be to obtain property.*

The money was paid for board in advance. No false pretense as to furnishing board and lodging is averred or shown. Nothing appears to show that it was not as good as any other hotel. The money was paid for value, and the defendant was willing to give value, all that he promised. Indeed, nothing more appears on a careful study of the allegations than this—that he was cheated not out of any property or thing of value, but disappointed of his anticipated pleasure in being in close association with Welsh. If he had any remedy, it seems that a civil remedy to rescind the contract might have been ample. A fraud had been doubtless perpetrated upon him, if the indictment be true, and a very reprehensible one. But whilst the contract stood, he was not cheated of his money.

He could get the full value of that which he expected of it when he paid it.

The payment of the money for board is too remote a consequence of the false pretenses. They were not made *directly* for the purpose of having money advanced because of the facts. The object, as disclosed by the indictment, was to induce Fisher to *become a guest.* This does not come within the inhibition of the statute. To get the custom or patronage of a guest, is not to get property, but to induce a condition of things, or relation of the parties, out of which a contract to pay money for value may arise.

It was held in *Reg. v. Gardner, 36 Eng. Law & Eq. Rep.,* as reported in Mr. *Wharton's Work on Am. Crim. Law, sec. 2122,* that where a person obtained food and lodging as a boarder, on the pretense that he was a naval officer, the obtaining of such food and lodging was too remotely the result of the false pretense.

We think the court erred in overruling the demurrer to the indictment, and also the motion in arrest.

Reverse, with instructions to arrest the judgment and sustain the demurrer to the indictment.