LEATHERS *et al.* v. ROSS *et al.*

1. **Real Estate** : ACTION TO RECOVER : MINORS' LAND SOLD BY FATHER : RATIFICATION : EVIDENCE : TAXES PAID BY PURCHASER. A father purchased a section of land with his wife's money, and had a quarter-section of it conveyed to each of their four minor sons, who are plaintiffs herein. Afterwards, and while plaintiffs were yet minors, he conveyed the land to defendants in exchange for other land, a portion of which was conveyed to one C., who afterwards, for a named consideration, conveyed it to plaintiffs. Plaintiffs and defendants entered into possession of the lands which came to them respectively under these transactions, and defendants paid taxes on the lands which they thus claimed to own. This action was to recover the land conveyed by the father to defendants. *Held*—

   (1) That if C. was a mere conduit for passing the title from defendants to plaintiffs of the land which C. conveyed to them, and plaintiffs accepted and disposed of this land, knowing that it was the consideration which defendants had paid for the land in question, this would be a ratification of their father's act in making the exchange, and that they could not recover; but

   (2) That, in order to defeat plaintiffs' recovery on their legal title, it was necessary for defendants to prove these facts by clear and satisfactory evidence, which they have failed to do.

   (3) That, since defendants paid taxes on the land in good faith, believing that they were the real owners, they were entitled, upon a decree being entered for plaintiffs for the lands, to a judgment for such taxes with interest, the same to be a lien on the land.

2. **Evidence** : TRANSACTIONS BETWEEN PERSONS DECEASED. In an action to recover land which plaintiffs' father traded to defendants' brother for other lands, where the father and brother and an intermediate owner were all dead, *held* that one of the defendants was incompetent to testify to the personal transactions between the persons deceased. (Code, sec. 3639.)

3. **Deposition** : OBJECTING TO INCOMPETENT EVIDENCE : TIME. Where a witness in a deposition gave incompetent testimony, because relating to transactions with one deceased, but the adverse party did not know of the decease until the examination in chief had closed, and he then made the objection, and afterwards, six months before the trial, he moved the court to strike out the objectionable testimony, *held* that the objection was made in time.

*Appeal from Hancock Circuit Court.*—Hon. John B. Cleland, Judge.

### Filed, June 8, 1888.

This is an action in chancery, and involves the title and ownership of six hundred and forty acres of land in Hancock county. There was a decree for defendants, and plaintiffs appeal. The facts appear in the opinion.

*A. C. Ripley* and *Laughlin & Campbell,* for appellants.

*Brockway & Elder* and *E. B. Soper,* for appellees.

Rothrock, J.—I. The legal title to the land is in plaintiffs. They brought actions to recover possession and quiet their title as against defendants. The record of title shows that each of the four plaintiffs is the owner of one-fourth of the land. The four actions were consolidated, and the defendants answered, setting up their equitable claim to all of the lands, and there was but one trial in the court below. The claim made by the defendants is that the plaintiffs, who are brothers, were once the legal and equitable owners of the property, and that, while they were yet minors, Danford Eddy, their father, exchanged and conveyed the land in controversy to the defendants for two hundred and forty acres of land in Ringgold county, and caused the said Ringgold county land to be conveyed to the plaintiffs; and that the plaintiffs, knowing that such an exchange was made, and the consideration therefor, accepted the land in Ringgold county, and used, sold and conveyed the same; and that they are thereby precluded from asserting title to and ownership of the land in controversy, as against the defendants.

There can be no question that, if the claim made by the defendants is shown to be true, the plaintiffs cannot

*1. Real estate : action to recover : minors' lands sold by father : ratification : evidence : taxes paid by purchaser.*

recover the land.   If one person assumes to sell and convey the land of another, and the owner, with a knowledge of the facts, receives the consideration, and appropriates it to his own use, he cannot be allowed to question the transaction.   See *Stroble v. Smith*, 8 Watts, 280 ; *Com. v. Shuman's Adm'r*, 18 Pa. St. 343 ; *Smith v. Warden*, 19 Pa. St. 424 ; and *State v. Stanley*, 14 Ind. 409.

Counsel for defendants cite and rely upon these cases, and insist that, under the facts disclosed in evidence, the decree of the circuit court must be sustained. The question to be determined is whether the defendants have made such a showing of facts as will overthrow the legal title ; or, in other words, whether the plaintiffs ratified the acts of their father in conveying the land, by receiving and appropriating the consideration therefor, with a full knowledge of the facts attending the transaction.   If they did, the transaction touches the conscience, and the plaintiffs ought not to be allowed to hold the land, and the consideration for which it was sold ; and, as the cause is here for trial anew upon the evidence, the question must be determined upon the preponderance of the evidence, and in view of the rule that, as the defendants seek to overthrow a plain legal record title, they must, in order to succeed, establish the equity which they assert by clear, satisfactory and conclusive evidence.   There is no question made as to the original ownership of the land.   It is the sixteenth section in the township in which it is situated, and was therefore school land.   The evidence shows that it was purchased from the government by Danford Eddy with the money of May Eddy, his wife, and that Danford Eddy caused the patents to the four quarter-sections to be issued to their four sons, Dearett Eddy, Milton Eddy, Lincoln Eddy and Harvey Eddy.   Their patents were duly recorded long before the conveyance in question was made.   The records of Hancock county, where the land was situated, showed the title to the land to be in the four sons, and their parents had no more right nor authority to divest them of their title than a

stranger would have. There is no pretense that the plaintiffs held the title in trust for any purpose. It was a fee-simple, absolute and indefeasible title. Danford Eddy sold and conveyed the land in September, 1875, and at that time his sons were all minors, aged about eighteen, sixteen, twelve and six years, respectively. The defendants, James Ross and Moses A. Ross, and their brother, Lorenzo Ross, now deceased, owned a farm in Ringgold county, and the evidence shows that in September, 1875, they exchanged their farm with Danford Eddy for certain wild and uncultivated lands, situated in Hancock, Winnebago and Cerro Gordo counties. The land in controversy was conveyed by Danford Eddy and wife to defendants in the exchange thus made. The farm in Ringgold county contained six hundred and forty acres. The defendants conveyed about four hundred acres of the farm to May Eddy, and the remainder, consisting of two hundred and forty acres, appears by the record to have been conveyed to one Robert Clarke for a named consideration of four thousand dollars, and is dated on the twentieth day of September, 1875. On the eleventh day of January, 1876, Robert Clarke and wife conveyed the two hundred and forty acres by warranty deed to the plaintiffs for a named consideration of fifteen hundred dollars.

It is proper to state here that Danford Eddy, Robert Clarke and Lorenzo Ross all died before 2. EVIDENCE: transactions between persons deceased this action was commenced, and the only witness to the actual transaction between the parties to the exchange of the lands was James Ross. His deposition was taken in behalf of the defendants, and was read on the trial in the court below. A motion to exclude all that part of his deposition relating to personal transactions between himself· and Danford Eddy was overruled. The motion is again presented in this court. Under section 3639 of the Code, James Ross could not be examined as a witness as to any personal transactions between him and Robert Clarke or Danford Eddy, unless the plaintiffs waived their right to exclude the testimony. The defendants

contend that they did not make the objection to the testimony at the proper time nor in the proper manner.

**3. Deposition: objecting to incompetent evidence: time.** The original deposition now on file in this court shows that, at the close of the examination in chief of the witness, counsel for appellants asked him if Danford Eddy was living or dead. The witness answered that Eddy died since the year 1878. Thereupon appellants caused the notary public who took the deposition to insert the following: "Plaintiffs move to strike out from the deposition of James Ross herein all that part of his testimony referring to conversations had by him with the said Danford Eddy in relation to the matters in controversy in this action, for the reason that the same is incompetent." And, in the course of the cross-examination of the witness, appellants caused the notary to make the following entry in the deposition: "The plaintiffs ask the following questions, the answers to which are to be read on condition that the court overrules the motion heretofore made by plaintiffs to exclude all the evidence of the witness relating to conversations had with Danford Eddy."

After the deposition was taken and filed, a formal motion was presented to the court, asking that the objectionable testimony be stricken out, on the ground that it was incompetent, irrelevant and immaterial. This motion was presented with the deposition to the court. We cannot conceive that appellants could have been more prompt than they were in making objection to this incompetent testimony. They objected immediately upon the disclosure being made of record that Danford Eddy was dead, and the record shows that by motion they called the attention of the court to their objection some six months before the trial was had. The case of *Watson v. Riskamire*, 45 Iowa, 231, relied upon by counsel for appellees as authorizing the overruling of the objections and motion, has no application to the facts attending the taking of the testimony in question, and we think we must disregard the incompetent testimony in determining the case.

The record of these conveyances shows that the defendantsdid not convey the two hundred and forty acres in Ringgold county to the plaintiffs. The conveyance was made to Robert Clarke, who afterwards conveyed it to the plaintiffs. There is no evidence in the record from which it can, with any plausibility, be claimed that Clarke was a mere medium through which the title passed from the defendants to the plaintiffs. On the other hand, the testimony of May Eddy tends to show that the land was bought with her money from Clarke, and conveyed to the plaintiffs. It is true, her testimony is not explicit on this question. But it was incumbent on the defendants to overcome the presumption arising upon the face of the deeds. Even if we were to consider the testimony of James Ross, that the deed to the two hundred and forty acres was blank as to the grantee when delivered to Danford Eddy, it falls short of overcoming the effect of the deeds, for the reason that there is no sufficient and competent evidence that the passing of the title to Clarke, and his conveyance, was not made upon a substantial consideration between him and the defendants and Eddy; and, besides, there is no evidence that May Eddy, who furnished the money to buy the land in controversy, knew that she signed any deed conveying it away. She testifies that she signed blank deeds, but had no knowledge that there was any intention to convey the land of the plaintiffs, and there is no evidence that the plaintiffs, minors as they were, knew, when the two hundred and forty acres was conveyed to them, that their father had conveyed the land in controversy to any one. The whole transaction impresses one with the idea that Danford Eddy recklessly bartered away the land of others to which he thought he could afterwards acquire the title, and we find nothing in the record which we think entitles the defendants to the land in question. They were within a few miles of the county-seat of Hancock county when they consummated their contract of exchange, and their loss, if any, is fairly attributable to their own negligence in failing to ascertain from the

records whether Danford Eddy was the owner of the land which he attempted to convey. The presumption arising from these deeds is that the two hundred and forty acres was not given in exchange for the land in controversy, but that it was sold by the defendants to Clarke for four thousand dollars. We have not thought it necessary to state that Harvey Eddy conveyed his share of the two hundred and forty acres to the plaintiff Leathers before any actions were commenced by the plaintiffs. This will explain the reason why Leathers appears as one of the plaintiffs. His rights, however, are not different from those of Harvey Eddy, if he were still the owner.

II.   It appears from the record that the defendants paid the taxes on the land in controversy for several years, as shown, by the abstracts of appellants and appellees. The appellees ask that, in case the decree as to the title be reversed, the appellants be required to pay them the amount of said taxes, with six per cent. interest from the time the respective payments were made. As it sufficiently appears that the defendants paid said taxes in good faith, and in the belief that they were the owners of the land, an order will be entered that the same be made a special lien and charge upon the property in favor of the defendants, and the clerk will ascertain the amount from the abstracts on file in this court.

The decree of the circuit court will be reversed, and a decree will be entered here quieting the plaintiffs' title upon the payment of the said taxes with interest.

REVERSED.