STATE OF IOWA, Appellee, v. H. A. CHAMBERS, Appellant.

**APPEAL AND ERROR:** Decisions Reviewable—Order Overruling
1 Motion for Directed Verdict—Failure to Renew. Failure to renew, at the close of all the evidence, a former motion for a directed verdict, made at the close of plaintiff's evidence and overruled, works a waiver of said latter ruling, but not a waiver of the right to insist that the verdict (a) is without support in the evidence, and (b) is the result of passion and prejudice.

**FALSE PRETENSES:** Elements of Offense—Allowance of Claim
2 by County—Effect. One who, having authority from the board of supervisors to employ certain employees on behalf of the county, fraudulently and by false pretenses induces the board to reimburse him in an amount in excess of what he had paid or obligated himself to pay said employees, may not successfully claim that his fraud was neutralized by the fact that said board, exercising their sole power to fix the compensation of unsalaried employees, allowed said claim.

**FALSE PRETENSES:** Nature of Pretenses—Opinions—What One
3 Has Paid Another. A representation to a board of supervisors, made for the ostensible purpose of obtaining reimbursement, that the one so representing had paid a stated sum of money to a stated employee of the county for the performance of a

stated county purpose, is a representation of a supposed fact, and the basis of a charge of false pretenses.

CRIMINAL LAW: Trial—Province of Court and Jury—Punishment. The court may properly enlighten the jury, in a prosecution for false pretenses, as to maximum punishment provided for the offense, and, with equal propriety, may tell them that they have nothing to do with the extent of punishment.

CRIMINAL LAW: Instructions—Requisites and Sufficiency—Reciting Charge. An instruction which is a mere recital of what the indictment charges is not erroneous because the court does not in the same breath inform the jury as to the elements of the offense.

CRIMINAL LAW: Appeal and Error—Reservation of Grounds. An objection to an instruction not made in the trial court will not be considered on appeal.

CRIMINAL LAW: Appeal and Error—Inviting Error—Estoppel. One may not voluntarily inject an issue into the trial in the lower court, introduce testimony thereon, and ask instruction with reference thereto, and then on appeal assert that the issue was immaterial and prejudicial to him, and that there was error in allowing his antagonist to introduce testimony on said issue.

FALSE PRETENSES: Intent—Rule of Evidence—Refusal to Instruct. Any testimony is admissible on the trial of a charge of false pretense, to prove or disprove the specific intent to defraud, so long as it singles out in the proof something which establishes or negatives the existence of such intent, and, on request, the court must specifically instruct as to the effect thereof. *Held* error to reject certain offered testimony.

PRINCIPLE APPLIED: Defendant, a county highway engineer, appears to have been authorized in some manner by the board of supervisors to employ and pay assistants. He was indicted for false pretenses, in that he had presented a claim to the board of supervisors and had induced its allowance and payment to him by falsely representing, with intent to defraud, that he had paid a stated amount to said assistants, when, in truth and in fact, he had paid a lesser amount. Concededly, he had paid the assistants less *in actual cash* than the amount of the allowed bill (which fact was known to the assistants), but, as tending to disprove (a) the charge of falsity of the representations, and (b) any specific intent to defraud the county, he offered to prove that what he paid the assistants in actual cash, plus the value of what he had given them in valuable

conveniences and accommodations, equaled the amount of the bill allowed and paid by the county. He showed that he had furnished the assistants with instruments, had paid for repairs thereon, had furnished them a bookkeeper, who had saved them labor which they otherwise would have been compelled to do, and had furnished them industrial insurance, telephones and janitor service. *He was not permitted to show what these items had cost him. Held*, error.

It seems that, at other stages of the trial, *some* evidence did get into the record as to these payments—at least that defendant had furnished something to his assistants in addition to the cash paid them. *Held* error to refuse to specifically instruct as to the effect thereof.

**CRIMINAL LAW: Trial—Defendant as Witness—Improper Cross-examination.** Where the court erroneously refused to permit defendant, charged with obtaining property from a county by false pretenses, to show that he had made expenditures for and on behalf of his assistants which, with the cash paid them, equaled the amount he had drawn from the county, it was especially erroneous for the court to permit the State, on cross-examination; and prior to the time the defendant had mentioned his said expenditures, to show that part of said expenditures had been furnished by the county.

**WITNESSES: Examination—Improper Form of Question.** Reversible error does not necessarily result from allowing a question which contains an improper characterization by counsel of the witness' conduct. So held where the witness, on trial for false pretenses, was asked if he wanted to say that he was getting a "rake-off."

**FALSE PRETENSES: Intent—Evidence—Absence of Concealment or Secrecy.** Principle recognized that the fact that a transaction on which is based a charge of obtaining property by false pretenses was free from concealment and secrecy, is material on the question of intent.

**TRIAL: Reception of Evidence—Cumulative Evidence—Limiting Number of Witnesses.** The trial court has a fair discretion as to the number of witnesses whom he will permit to speak to the same point.

**CRIMINAL LAW: Appeal and Error—Reservation of Grounds—Erroneous Exclusion of Evidence.** If testimony be erroneously excluded, proper exception should be taken to such exclusion, not to the refusal of the court to instruct as to the effect of such evidence had it been received.

**FALSE PRETENSES:** Intent—Rule of Evidence—Refusal to Instruct.

**FALSE PRETENSES:** Elements of Offense—Nature of Pretense—Insufficiency. On a charge that a county engineer had, by false pretenses, induced the county to reimburse him for salary paid by him to his assistants in an amount in excess of that which he had actually paid them, it may not be said that the county was defrauded if the amount which the engineer did give the assistants in cash, plus the amount which he gave them in things other than cash, but which they knowingly accepted as cash, equaled or exceeded the amount drawn from the county.

**FALSE PRETENSES:** Intent to Defraud—Not Inferable From Making of False Pretense. An intent to defraud must be specifically proven, and may not be inferred from the fact that a false pretense was made.

**FALSE PRETENSES:** Intent to Defraud—Evidence—Instructions. As tending to show absence of any intent to defraud, a public officer, charged with obtaining property from the county, by false pretenses, as reimbursement for amounts paid assistants, may show:

1. That he had not charged the county for his personal services *as much as he was legally authorized to charge.*

2. That the written claim upon which the prosecution was based contained errors *in favor of the county.*

And, on request, the court must instruct as to the effect of such evidence. Instructions given reviewed, and held not to cover the point.

**CRIMINAL LAW:** Trial—Province of Court and Jury—Instructions—Assumption of Fact Favorable to Accused. The court should, in its instructions, assume as true an undisputed fact favorable to the accused.

**CRIMINAL LAW:** Province of Court and Jury—Assumption of Existence of Intent. The existence on the part of the accused of an intent to defraud, must not, under any state of evidence, be directly or indirectly assumed.

**CRIMINAL LAW:** Trial—Instructions—Applicability to Evidence. An instruction inapplicable on a vital point to the evidence is necessarily reversible error. So held where, on a charge of false pretenses, the instructions authorized conviction on proof of only a part of connected and inseparable representations.

FALSE PRETENSES: The Pretense—What Constitutes. Whether
21 the filing of a claim against a county by a highway engineer
for reimbursement of the amount paid by him to assistants,
constitutes a representation by the engineer that he had paid
the several amounts to the assistants named, or had obligated
himself to so pay, or whether such representation is fairly
inferable therefrom, is not a law but a jury question. (The
exact form and contents of the claim in question do not appear
in the opinion.)

FALSE PRETENSES: Elements of Offense—Accomplished Fraud
22 or Intent Only. Whether one may be convicted of obtaining
property by false pretenses only on a showing that the fraud
was accomplished, whether one may be convicted on a showing
that he cheated another into doing that which such other ought
to have done, or whether an *intent*, only, to defraud is essential,
*quaere;* because, in the case at bar, the instructions made ac-
complished fraud the law of the case.

*Appeal from Boone District Court.—*E. M. McCall, Judge.

MONDAY, FEBRUARY 19, 1917.

DEFENDANT appeals from a conviction on an indict-
ment charging him with having obtained money from Boone
County under false pretenses, whereby said county was de-
frauded and cheated to the amount of $94.70.—*Reversed and
remanded.*

*Goodykoontz & Mahoney,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,*
Assistant Attorney General, for appellee.

SALINGER, J.—I. A motion to direct

1. APPEAL AND ERROR : decisions reviewable : order overruling motion for directed verdict : failure to renew.

verdict for defendant was made at the close
of the evidence for the State, and was not
renewed after the evidence for both sides
was closed. Hence we cannot review wheth-
er the motion was rightly overruled. This
does not preclude complaint that the verdict is contrary
to and not supported by the evidence, and the result of
passion and prejudice. Such is made, but we think not

well founded. This disposes of the claims that, as matter of law, there was no intent to defraud, no fraud committed, that the bill presented for allowance did not constitute making the false pretenses charged, and that defendant did not intend to make the representations or pretenses charged.

As we understand, there is no claim that there was insufficient evidence to send reliance to the jury, and not disputed that, if a representation was made, it was made to the board of supervisors.

### 1-a

As we understand it, it is not disputed that defendant obtained the amount he made claim for. Therefore, we are at some loss to understand the relevancy of *In re Cameron* (Kans.), 24 Pac. 90, that, if defendant is entitled to the immediate possession of the property which he obtains by false pretense, he cannot be convicted; and of *State v. Moore*, 15 Iowa 412, and Mikell Cas. Crim. Law, 846, that obtaining what is the equivalent of an endorsement of credit on an evidence of indebtedness is not within the statute.

### 1-b

2. FALSE PRE-
TENSES : ele-
ments of of-
fense : allow-
ance of claim
by county : ef-
fect.

By Instruction F offered, defendant contends, as we understand him, that in no event could he have obtained more than was due for the services of his employees, because the allowance of a sum to pay these assistants was the act of a body that had the sole power to fix their compensation, and the very act of allowing settled, therefore, that the sum allowed was justly due and owing. Assuming fraud effected is a material element, and saying nothing of it that this is at bitter variance with another theory of the defendant most strenuously urged, to wit, that he is a private employer with private employees, we have to say we do not agree to the contention. If the other elements of the crime are proved, an allowance into

which the board was cheated cannot well cancel the fraud that induced the allowance. Related is the argument that, if the allowance fixed the compensation of the assistants, then the county may not complain because the assistants allowed another to receive part of what they got. This begs the question, and assumes that the allowance has the effect which we find it cannot have.

### 1-c

**3. FALSE PRETENSES: nature of pretenses: opinions: what one has paid another.** Relying upon 19 Cyc. 398, 399, and *People v. King,* 43 N. Y. S. 975, defendant contends that, even if he falsely made the representation charged, to wit, that he had paid a stated sum for the services of named assistants, and that the services were not worth what was charged for them, it was at most a false representation as to the value of services, which is a mere matter of opinion. We think a representation that one has paid an employee a stated sum for a stated purpose is not a mere opinion as to what the services of employees were worth, but a representation of fact concerning the amount they had been paid.

### 1-d

Complaint is made that an attorney for the State was guilty of misconduct in argument. The contention is disposed of by the fact that no argument is found in the record.

### 1-e

We cannot agree that the imposition of a fine of $500 was in such sense an excessive punishment as that we may interfere with the discretion vested in the trial court in the premises.

### 1-f

**4. CRIMINAL LAW: trial: province of court and jury: punishment.** Instruction 1½ is complained of because it told the jury what the penalty was for the offense charged, and, further, that the method of punishment did not concern the

jury, but was matter for the judgment and discretion of the court. The main objection is that this was misleading and erroneous, and calculated to induce the jury to return a verdict of guilty on the supposition that the minimum penalty will be imposed, and that describing the punishment has been disapproved by the Supreme Court. The exceptions are not well taken.

II. The exceptions to Instruction I are not well taken: (1) Because they complain of matter that is neither contained in nor effectuated by the instruction; (2) because the instruction, being merely a statement of what the indictment is, should not declare what are the elements of the offense charged, nor what the law deems the gist of that offense.

5. CRIMINAL LAW: instructions: requisites and sufficiency: reciting charge.

### 2-a

The refusal to give Instructions G and N needs no attention, beyond saying that all they urge was given in Instruction 5¾. Moreover, N is predicated on necessity created by the closing argument for the State, and the argument is not in the record.

### 2-b

Instruction 5¾, if subject to objection, was not excepted to in regard to matters now complained of, and the exceptions that were .taken are not well taken.

6. CRIMINAL LAW: appeal and error: reservation of grounds.

### 2-c

Instructions 2, 3 and 5 have been carefully considered with reference to the exceptions lodged against them, and we find that these exceptions are not tenable. It will profit no one to say more on this.

The same is true of the claim that Instruction 5 and Instruction 5½, each or together, are in conflict with Instruction 4.

**7. CRIMINAL LAW: appeal and error: inviting error: estoppel.** III. Over objection by defendant, the court received evidence that defendant had been appointed highway engineer. Defendant claims that this, and some of the instructions, erroneously caused him to be tried for official misconduct, though he was not a public officer; that this constitutes a variance between indictment and proof; and that it made his conviction possible when a private person could not have been convicted. This has brought on an elaborate and vigorous dispute over whether defendant is a public officer. The argument presents whether certain statute law claimed to control was in existence at the time defendant did what is complained of. It presents many book definitions of "officer," and quite a number of authorities from other jurisdictions which declare who is or is not a public officer. In some, the fact that the functionary under consideration is such officer is self-evident. In others, the contrary is as clear. Some disprove the claim of the party who cites them. We think all this is an immaterial controversy.

It is clear that defendant does not complain that any wrong was done him if he be a public officer, but of having been erroneously forced into the position of being one. If he may not complain of error, if any there be, in dealing with him as an officer, then he is in no position to complain of what consequences naturally followed being so dealt with. We think the record shows that he invited what was done. Let us assume that the instructions given and testimony taken despite objection do work that defendant is treated as a public officer. But did not defendant invite and sanction this, notwithstanding exceptions by him taken? He testified voluntarily: "I remember the occasion of my being appointed highway engineer; it was in the spring of 1913." He testified further that, when he presented his bill to the county, he did not consider that he was a county engineer in the year 1913; that he did not think he was an

officer. How can he be heard to say now that whether he was an officer was an immaterial matter, was irrelevant to the inquiry, and a variance of the indictment? He put into evidence that he had been appointed engineer. Why, if he was insisting that he was a private employee or employer? He offered an instruction that he was entitled to be paid for a day if he did any work on a day. Under the law, that is something which none but officers may have. In two other instructions, he desired the jury to be told that they might take into consideration that defendant in good faith believed he was not an officer. Such a request recognizes that whether he was an officer was material and a proper inquiry relevant to the indictment, and asserts that, though he be, the fact is avoided if, notwithstanding, he had an honest belief he was not such officer. What defendant desires is to avoid without confessing, have the court tell the jury what will excuse him, though an officer, and then complain that the question of his being an officer got into the case. It is not permitted him to urge here that there was error in dealing with him as being a public officer. He will, however, suffer little by reason of this, because the State is willing he shall have the same hearing as if it were conceded that he is not an officer. And we treat his assignments as made on the appeal of a private person.

### Division II.

I. Citations and what their investiga-

**8. FALSE PRE-TENSES: intent: rule of evidence: refusal to instruct.** tion lead to have engaged us in an analysis of a number of our own decisions and of 107 cases from 62 jurisdictions other than Iowa, and the analysis merely demonstrates that specific intent is an element in some prosecutions, and not in others. They range from selling or adulterating intoxicating liquors and milk to harboring slaves, and from bigamy to the sale of naptha. One merely holds that the statute against cheating

by false pretense does not except infants. *Moore v. State,* (Tex.) 20 S. W. 563, has no bearing on anything involved here. The ultimate demonstration is that whether specific intent need be proved depends upon statute, and that under our statute such intent is an essential element—there can be no conviction without proof of intent to defraud. That must be agreed to, since that very statute expressly makes such intent essential. It follows that we have been led into what is worse than labor lost. *State v. Minella,* 177 Iowa 283.

If authorities are needed adducing, *Commonwealth v. Jeffries,* (Mass.) 83 Am. Dec. 712, at 721, will suffice. It holds that the making of a false pretense is not of itself criminal; that, under the very words of a statute such as our own, it becomes so only by being accompanied with a fraudulent intent, and that this intent is part of the issue and must be proved.

Now it is not claimed that the court held it was not essential to prove this intent. The complaint is that there was undue restriction in permitting testimony tending to negative intent, misapprehension of the effect of such as was received, and error in dealing with instructions upon intent.

In *Commonwealth v. Jeffries,* (Mass.) 83 Am. Dec., at 721, 722, it is said that, to prove intent to defraud, anything is admissible that leads to the just inference that whatever was done was with intent to defraud; that there is no limit "except that it cannot be extended to facts or circumstances which do not necessarily bear on the issue to be established, precisely as evidence of all collateral facts and circumstances must be confined to the proof of those which have a legitimate and direct connection with the principal transaction"—any circumstance, providing it be a "significant circumstance bearing on this intent." It would seem

to follow that this is as applicable to evidence negativing intent as it is to establishing such intent.

It is our view that anything is admissible to prove or disprove the intent to defraud, so long as it singles out in the proof something which establishes or negatives the existence of this specific intent, and that its presence or absence is a question for the jury. See *People v. Getchell,* 6 Mich. 496; *Commonwealth v. McDuffy,* 126 Mass. 467; 19 Cyc. 446; *McMullen v. State,* 53 Ala. 531. Further support will be cited in another connection. A greater than ordinary latitude is permitted—nay, commanded. See *Commonwealth v. Jeffries,* (Mass.) 83 Am. Dec., at 720, 721; *Commonwealth v. Tuckerman,* 10 Gray (Mass.) 173, at 197; *State v. Foxton,* 166 Iowa 181, at 202, 203; 12 Cyc. 156, citing *Commonwealth v. Stebbins,* 8 Gray (Mass.) 492; *People v. Husband,* 36 Mich. 306; *State v. Garris,* (N. C.) 4 S. E. 633; *Commonwealth v. Power,* 48 Mass. 596. It should follow that the same latitude is permitted to disprove intent. 19 Cyc. 442, 443; Elliott on Evidence, Sec. 2975; *State v. Mason,* 136 Iowa 554; *State v. Collins,* 32 Iowa 36, at 38; *People v. Schultz,* (Mich.) 38 N. W. 868.

II. One item of the claim for the work of Stewart is $3. In cash, Stewart did not get more than $2.25. This will do for a type. It appears defendant furnished his assistants instruments, paid for repairs on same, employed a bookkeeper who did some work which the assistants would otherwise have had to do, and paid for industrial insurance of all employees, telephone rent and janitor services. Mainly on the objection that it was immaterial, the court refused to let him show further what these various expenditures reasonably came to, in money. The record indicates one reason for the ruling to be the position that something other than cash, though accepted as payment, will not operate as such for justifying a claim that a certain sum had been paid out. The question is whether this was giving

defendant the required latitude. The State advances several theories to sustain this exclusion. One was that defendant was limited to what his contract gave him. On that reasoning he was entitled to nothing for his helpers, even to the extent of what he had actually paid them for what they had actually earned. We will not enlarge, beyond saying that its theories must be unsound if what appellant urges against the exclusion is sound.

Defendant contends that the testimony rejected bore on whether the alleged representation was false; that coupled with the fact there was no concealment or secrecy, and the employees knew more was being charged than had been paid them in cash, this testimony tended to negative intent to defraud, as well as fraud committed. It is argued that what defendant furnished cost him cash; that it tended to make the work of his assistants more effective, conserved their time, and so gave the county more work in a given time than it would else have had; that, as the State claims fraud because defendant got more than he paid, he should have been permitted to show, if he could, that he paid as much as he got; and that the testimony was also admissible to meet an alleged assumption in Instruction 4 that defendant was attempting to increase his compensation by making a profit on the wages of his assistants.

The citations presented on this point are, as a rule, of little or no value. *Morgan v. State,* 42 Ark. 131, turns off on the proposition that the pretense made was an immaterial one; and so of 19 Cyc. 398. *Clark v. Ralls,* 58 Iowa 201, at 204, *Parks v. Burbank,* 58 Iowa 707, at 709, and *Commonwealth v. Brown,* (Mass.) 45 N. E. 1, deal with what may be the subject of actionable false representations, as, for instance, profits. But in *Commonwealth v. McDuffy,* 126 Mass. 467, defendant was to build a house and pay all bills for materials used therein with money to be given him by the owner from time to time upon the pres-

entation by him to her of bills for such materials. On final
settlement, defendant was given a draft for $1,000, and a
certain sum was returned to the owner by defendant, and
his bill was thus settled. He contended, against a convic-
tion for cheating by false pretenses, that, upon the settle-
ment at which it was alleged he made the false representa-
tions, he was allowed nothing for his services in building,
and was entitled to receive for his personal services in
that regard the sum of $650; that the sum he received in
fact was not more than enough to pay him for the bills he
had actually paid and for his services; and that as, there-
fore, he has not defrauded anyone, he was not guilty of
false pretense even if he had made untrue statements. While
a witness, he was asked to say what sum he had actually
put into the house, but the judge ruled that the inquiry
was immaterial. The counsel for defendant then suggested
that it might be important for defendant to prove that he
received no more money than sufficed to pay what he had
actually paid out and what was actually due for labor and
materials furnished at the time of the settlement; but the
judge ruled that, if defendant actually made false repre-
sentations as to what went into the house as materials, he
might be guilty even though he had received no more than
was due him. The most the judge would do was to charge
that, if defendant made the false representations for the
purpose of obtaining money that he believed to 'be due him,
and believed he had a right so to obtain the money, the
indictment could not be sustained. And it is said:

"It is not easy to understand why, in the view of the
law as stated by the presiding justice, evidence of the ex-
act amount of indebtedness to the defendant was excluded;
for such evidence would be apparently competent upon the
issue of the defendant's belief.  *  *  *  The defendant
should, therefore, have been allowed to offer evidence in
support of the facts upon which his prayers are predicated,

and the jury should have been instructed that, if proved, the defendant was entitled to an acquittal."

In *People v. Genung,* 11 Wend. (N. Y.) 19, it is said that it would, no doubt, have been competent for defendant to have established by proper evidence that the balance actually due from prosecutor was $40 instead of $4. These decisions are sound on principle. It is unthinkable that one who obtains some $94 by falsely representing that he has paid that sum to his employees in cash may be made a felon by refusing to let him show that he in truth paid them much more than $94, and, though not in cash, in what was its accepted equivalent.

We think the complaint of this exclusion is well made.

### 2-a

9. CRIMINAL LAW: trial: defendant as witness: improper cross-examination.

When a certain point was reached in his cross-examination, defendant had not said anything to the effect that he was entitled to make a charge against his three assistants to cover the expense of office rent. The court permitted the State to show on this cross-examination that part of the rent had been paid by the county. This would have been proper, had the court not refused to let defendant show how much his expenses came to in money. But to permit this cross-examination with that testimony absent was to inform the jury that *something* was given to the defendant by the county additional to the salary contracted for, and upon that to conjecture that the rent allowed by the county more than offset the other expenses that defendant may have paid. The jury, having no guide as to the amount the defendant had been paying for these expenses, might readily set off their guess as to the amount of office rent paid by the county against their guess as to the amount of these other expenses. We think the cross-examination should not have been permitted.

### 2-b

In the course of this examination, the defendant was asked:

10. WITNESSES: examination: improper form of question.

"You do not want to say to the jury you were getting a rake-off on Illeman, Boyle and Stewart's wages for office rent?"

Apt objections were overruled with the remark, "He may make such explanation as he desires regarding it;" and thereupon the witness said:

"I wasn't getting a rake-off, I did not make a difference in what I was actually paying these men and what I was charging the county for them to help pay the office rent."

It would have been better to have sustained the objection and in some form advised counsel and jury that the court disapproved of the form of the question. But there is no clear abuse of discretion, and we do not base reversal upon this examination.

### 2-c

It appears there was neither concealment nor secrecy, and the authorities hold that this has bearing on intent. *Lawrence v. State,* 11 Tex. Ct. of Appeals 306; *McMullen v. State,* 53 Ala. 531; and see *State v. Bond,* 8 Iowa 540. The proposition is purely academic, because it is not contended that the court excluded evidence tending to show there was no secrecy, or instructed that open dealing was immaterial.

11. FALSE PRETENSES: intent: evidence: absence of concealment or secrecy.

### 2-d

If showing that the amount obtained for services of the assistants was not greater than these services are reasonably worth tends to negative intent to defraud and fraud, defendant was not denied showing it. All he complains of is that cumulative testimony to that effect was excluded. The trial court has some discretion on how many

12. TRIAL: reception of evidence: cumulative evidence: limiting number of witnesses.

witnesses may speak to one point, and we cannot say it was abused.

III. If there be no evidence of payment, it is not error to decline a charge on the effect of payment, even if the evidence is absent because it was erroneously excluded. The complaint must be lodged against the exclusion, and not the refusal to instruct.

13. CRIMINAL LAW: appeal and error: reservation of grounds: erroneous exclusion of evidence.

But we find that, after testimony of what certain things furnished the assistants were worth in money had been erroneously rejected, enough remained or was put in to demand an instruction upon the effect of payment in things other than money. True, there is no testimony in terms as to the money value of these things, but the jury was told what they were. And while defendant may not have paid for quite all that the men were furnished, the fact remains that something other than cash was furnished by defendant.

14. FALSE PRETENSES: intent: rule of evidence: refusal to instruct.

Instruction C, refused, presented the thought that defendant was under no obligation to furnish these things, and that, in determining whether the assistants got as much as was claimed in the bill, the furnishing of these things should be considered, and that, if what was paid the assistants in cash, plus the matters thus furnished, was equal in value or exceeded what defendant obtained, the jury should find that the county had not been defrauded. It is argued that, since defendant concedes he had not paid the men as much literally in cash as he obtained from the county, refusing this instruction and giving No. 5½, which justifies exclusion of anything but a money payment, and giving No. 4, which charges that presenting a bill claiming more than defendant paid constitutes a fraud, resulted in practically instructing a verdict of guilty. It appears that the assistants accepted what was fur-

15. FALSE PRETENSES: elements of offense: nature of pretense: insufficiency.

nished, knew defendant got more from the county than he paid them in cash, and it does not appear that they objected. While, ordinarily, payment is effectuated by cash only, yet when the parties agree to treat something other than money as constituting a payment, the law will so treat it. See Elliott on Contracts, Sec. 1927; 30 Cyc. 1187, 1190; *State v. Fowler,* (La.) 7 So. 180; *Whitley v. Dunham,* (Ala.) 7 So. 810; *Riverside Iron Works v. Hall,* (Mich.) 31 N. W. 152; *Sanford v. Clark,* 29 Conn. 457; *National State Bank v. Delahaye,* 82 Iowa 34.

We are of opinion that what was furnished should be considered on whether the alleged representation was false, on intent, and on whether the county was defrauded, and that, therefore, the instruction refused should have been given.

IV.   The text of 19 Cyc. 446, declares

**16. FALSE PRE-TENSES : intent to defraud : not inferable from making of false pretense.** that intent to defraud must be proved specifically, and may not be implied from proof that a false pretense was made. This is supported in *State v. Matthews,* (Kans.) 10 L. R. A. 308; *Woodruff v. State,* (Ark.) 32 S. W. 102; *State v. Lynn,* (Del.) 51 Atl. 878; *People v. Baker,* 96 N. Y. 340; *Skiff v. People,* 2 Parker's Criminal Reports 139.

On the other hand, it has been held that false representations authorize an inference that there was an intent to defraud (*People v. Herrick,* 13 Wend. [N. Y.] 87), and that fraud and falsehood are always evidence tending to show that the party had a dishonest purpose (*Commonwealth v. McDuffy,* 126 Mass. 467). In *Regina v. Franklin,* 4 F. & F. 94, ordering goods in the name of another makes prima-facie evidence of intent to defraud. And where, on prosecution for allowing an infant to play billiards, it is allowed as a defense that there was an honest belief that the player was not an infant, yet the fact that he was al-

lowed to play makes a prima-facie case. *Stern v. State,* (Ga.) 21 Am. Rep. 266.

The defendant requested an instruction (H) that, while whether or not there was such intent must be determined by all the facts and circumstances disclosed by the evidence bearing thereon, an intent to defraud must be specifically proven, and cannot be inferred from the fact, if it be a fact, that a false representation was made. We are unable to find anything in the instructions given that is fairly equivalent of this. The utmost that is done is to charge that intent to defraud must be found from all the facts and circumstances disclosed in the evidence. This was sufficient, in the absence of a request such as was made here, but it does not, as the refused instruction does, tell the jury that, in a stated condition of the evidence, the proof of intent is insufficient. We think the thought of the instruction offered is in accordance with the better considered cases, and the weight of authority, and it should have been given.

V. If defendant was a public officer,

17. FALSE PRE-
TENSES : intent
to defraud : evi-
dence : instruc-
tions.

he charged the county less for his services than the law permitted him to do. He urges that this fact should have been submitted to the jury for consideration on whether there was an intent to defraud, and whether the county was defrauded. If strict estoppels prevailed in the administration of criminal law, and defendant be held to supreme consistency, his claim is at variance with his complaint that he was erroneously held to be a public officer. In a sense, it is a contention that defendant was not an officer, but, for the purposes of settling his intent and whether he committed a fraud, should be treated as an officer. But we take it that, since the jury was by the instructions bound to deal with him as an officer, he may deny he was one and still complain that the assumption that he was an officer was not followed out by giving him the benefit of having claimed less

than he was entitled to on that theory. We think this was not submitted. True, Instruction 5½ charged that making an incorrect claim, or one exhibiting incorrect totals, would not of itself excuse defendant if the claim was false, and through it defendant obtained more than he actually paid to his assistants, and it was further found that all the other material allegations of the indictment, which, of course, include intent to deceive, have been proved. But in view of the fact that a definite instruction was asked, this can hardly be said to be a sufficient statement that, the court having held that defendant was an officer, he was entitled to $6 a day without reference to how many hours he worked on a day, and that failure to claim as much as that might be considered on whether there was an intent to defraud, and fraud.

VI. The complaint that Instruction D was refused is made immaterial by the giving of Instruction 6, except as to one item in Instruction D. The essence of that is that making an error in favor of the county tends to show an absence of fraudulent intent, on the reasoning that a jury may well find that one who presents a bill which is in some respects less favorable to the claimant than is justified is not likely in the same bill to act with fraudulent intent to get more on some item thereof than is justly due him. Not only is there no charge embodying this thought, but the jury was told in Instruction 5½ that, if all other material allegations were proven, and the bill was a false one in respect to the services of the assistants, and by the false bill defendant got from the county more than he had actually paid these assistants, then the fact that the claims made, or the totals stated, are incorrect, will not excuse defendant. Under the charge given, no authority was given the jury to consider an error in favor of the county on the question of whether there was an intent to deceive. And if, without so considering, it found the existence of this error

against the defendant, that there was a false pretense with intent to defraud and something was obtained thereby, it was told that a mistake made in favor of the county would be no excuse. This changed an asset into a liability by treating an error against defendant as though it were a claim which fraudulently claimed more than was due him. Defendant did not claim that presenting the incorrect bill would excuse him, but that, while this would be no excuse, an error against him tends to prove there was no intent to cheat, and that if, by reason of such errors, it resulted that the county paid no more than on the whole it should, it had not been defrauded.

18. CRIMINAL LAW: trial: province of court and jury: instructions: assumption of fact favorable to accused.

Then, too, it should not have been left for the jury to say whether there had been an error in favor of the county, because it appears fairly and without dispute that such error was made.

VII. Instruction 4 charges that defendant committed a fraud upon Boone County if it be shown beyond a reasonable doubt: (1) That he was appointed engineer; (2) that his compensation as such was fixed by the board of supervisors at the time of his appointment; (3) that he afterwards filed a bill or claim against the county and claimed therein an amount for money expended by him in employing assistants in the performance of the duties of his position; (4) that the amount so claimed was in excess of what he had actually expended or obligated himself to expend for that purpose, and knew this when he filed the claim; (5) that the board relied on his representation that he had paid or was obligated to pay the amount stated in the bill; (6) and that he obtained more by said representation than he had actually paid.

19. CRIMINAL LAW: province of court and jury: assumption of existence of intent.

This cannot be sustained. It directs that fraudulent intent is established as matter of law by proof that one

claimed more than he expended or had agreed to pay for
assistance, knew this when he made claim, and obtained
more than he had actually paid for such assistance. It is
pointed out elsewhere that other things in the evidence re-
quire consideration on whether there was a fraudulent in-
tent, and all enumerated might be true, and yet there be no
fraudulent intent.

It may be conceded, for the sake of argument, that the
jury might have been told that, upon finding the matters
enumerated, they *could* find an intent to defraud, or that
a fraud had been committed; but it was not for the court
to say they must so find.

So far as it seems to be material here, we held, in *State
v. Ledford*, 177 Iowa 528, that, on an indictment charging
adultery, proof that defendant was a married man is es-
sential to conviction; that this is a burden which never
shifts, and, no matter how strong or convincing the evidence,
it is never competent for the court to tell the jury that, as
matter of law, it has been sufficiently proved. In *People v.
Levison*, 16 Cal. 98, 99, it is held that the court may not
specify that certain things will constitute the essential
guilty knowledge on a charge of receiving stolen goods, and
that such guilty knowledge is a question of fact. We think
it may fairly be said that the court may not take from the
jury whether or not a required specific intent exists, and
whether an honest belief relied on in defense is honest or is
feigned; that such matters as these are and remain ques-
tions for the jury. See 19 Cyc. 446; *Marshall v. State*, 49
Ala. 21; *Dotson v. State*, 62 Ala. 141.

### 7-a

If defendant made any representation,
20. CRIMINAL LAW: it was that he had actually paid or was
trial: instruc-
tions: appli- obligated to pay his assistants the amounts
cability to evi-
dence. he claimed in his bill on that account. If
he obtained no more than he had *either* paid or obligated

himself to pay, he is not guilty. Yet this instruction makes it possible to convict him if he obtained "Some amount in excess of what he had actually paid for such assistance." Under this, a conviction is authorized if he was obligated to pay $100, of which he owed $50, if, by means of claiming it, he was paid $100; and the charge is therefore erroneous.

VIII. We think the complaint that the instructions assumed that the bill filed constitutes the representations set out in the indictment is not sustained by the record, and that a fair construction of the instructions is that they made it a jury question whether the bill makes such representation. Some of the instructions seem to us to say so in terms. True, No. 4, in stating what representations must be relied on, described them as being representations "that defendant had paid or was obligated to pay the amount stated in said bill for such assistants," but it adds immediately, "if any such representations were made."

21. FALSE PRE-
TENSES: the
pretense: what
constitutes.

IX. We think it should not be said as matter of law that the bill presented by appellant contained no representations alleged in the indictment, and that whether the bill does contain such representations, and whether it may be inferred either that the bill was intended or not intended to be such representations, were all questions for the jury. We think also that whether the filing of the bill constituted or was intended to constitute such representation was submitted to the jury in proper manner.

Indeed, appellant *says* that it was a question of fact whether the filing of the bill constituted the representations alleged in the indictment, and that the testimony of defendant that he did not intend the bill to be such representation is not necessarily conclusive. And in Instruction G, defendant requested a charge that it was for the jury

whether, if a representation was made, defendant intended it to be such an one as is counted on in the indictment.

X. There is a vast amount of case law that holds that accomplished fraud—injury —is essential even under statutes which do not mention fraud, but do make intent to defraud an element of cheating by false pretenses, and that one who is cheated into doing what he ought to do is not cheated at all. *Commonwealth v. Harkins,* 128 Mass. 79, goes to the extreme of holding that a defendant is not guilty of obtaining money by false pretenses on proof that by such he obtained the consent of a party to an entry of judgment in favor of defendant—this, for the reason that, as the judgment was conclusive evidence between the parties that the amount of it was justly due to defendant, and until reversed the city was legally bound to pay it, no fraud had been committed. Perhaps as extreme is *State v. Asher,* (Ark.) 8 S. W. 177, and *People v. Clough,* 17 Wend. (N. Y.) 351. Some of the cases claimed for it do, however, not sustain that fraud effected is essential.

*Clawson v. State,* 129 Wis. 650, while it *says* that an actual fraud must be committed, does not turn upon that point, but on finding, in effect, that the representation made was in fact true. *People v. McAllister,* (Mich.) 12 N. W. 891, cited for the text in Cyc., turns rather upon the fact that the pretense was immaterial than upon the necessity for showing injury. It is questionable whether— though we say in *State v. Foxton,* 166 Iowa, at 194, that prosecutor's being defrauded to his injury is an essential element—whether the real holding is not that there must be intent to defraud, and therefore an intent which, if consummated, may defraud someone to his injury. It is seriously debatable whether *State v. Jamison,* 74 Iowa 613, at 616, be not express authority for holding that suffering injury or loss is immaterial, and that, "under the statute,

*[margin note: 22. FALSE PRETENSES: elements of offense: accomplished fraud or intent only.]*

an intent to defraud only is required." Some are justified by express provision of statute. Almost as strong an array declares that actual injury is not essential. But we do not elect between the two positions, because the indictment charges fraud committed, and the existence or absence of such fraud was treated by all to be material. To illustrate:

XI.  It is complained that Instruction B was refused. Its essence is that there can be no conviction unless the prosecutor is shown to have suffered a loss. But Instruction 5¾ gives the equivalent, in that it charges that there can be no conviction unless "the county was defrauded by the allowance thereof and the payment of said bill to the defendant;" and in Instruction 2 the jury is told that it is one of the material allegations of the indictment that the county "was defrauded as charged in the indictment." This makes it the law of the case that effected fraud is essential, and we will say no more than that we leave open what the fraud is that is material, if any be. For illustration: Whether it may not constitute such fraud where one by false pretense obtains payment of a check, even if a suit in a distant state might restore the sum obtained upon the check by such pretense. For the most part, the complaints of how the court dealt with the intent to defraud include or apply to dealing with fraud effected. It follows from our finding that such fraud is made material by the law of the case that, where there was error in dealing with the intent to defraud, there was the like error in dealing with fraud accomplished.

For the errors pointed out in Paragraphs 2, 2-a, 3, 4, 5, 6, 7, 7-a and 10 of the second division of this opinion, the defendant must be awarded a new trial, and the case is accordingly—*Reversed and remanded.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.