JOHN POWERS, Appellee, v. IOWA GLUE COMPANY, Appellant.

EVIDENCE: Positive Assertions Against Physical Facts. A direct 1   assertion of fact which is detrimental to the interest of the party making it is not necessarily conclusive on the party if, upon a consideration of *all* the evidence and the physical facts attending the matter, it is clear that the assertion is not true.

APPEAL AND ERROR: Argument in Lieu of Brief Point Not Al- 2   lowable. A "brief point" applicable to each statement of error is *absolutely* essential, under Rule 53. Subsequent argument is not essential. Therefore, a point or proposition not appearing as a *brief* point, as by rule required, or insufficiently stated as a *brief* point, may not be considered, even though fully covered and elaborated in the general argument.

APPEAL AND ERROR: Exclusion of Unnecessary Evidence. The 3   erroneous exclusion of evidence which bears solely on a question of fact, on which the appellate court holds with appellant, is harmless.

TRIAL: Reciting Claims and Stating Issues. It is not improper for 4   the court to first state to the jury *all* that plaintiff claims, and then to state what items the jury may consider.

TRIAL: Stating Ultimate Facts for Recovery. A statement of the 5   ultimate facts which must be established, in order to justify recovery, is not rendered erroneous because the court did not, *instanter* and in the same instruction, proceed to define the terms used therein,—i. e., negligence,—such matters being adequately covered in later portions of the charge.

TRIAL: Omission in One Supplied by Insertion in Another. An 6   omission in one instruction may very properly be supplied in another.

**APPEAL AND ERROR:** "Points" Limited to Objections in Trial
7    Court. A "brief" point may not be so expanded as to embrace
an objection not made in the trial court.

**TRIAL:** Conflicting Instructions. When one instruction fails to
8    contain a limitation on plaintiff's right to recover, but a later
instruction plainly states such limitation, it is quite hypercriti-
cal to assert that the two instructions are in conflict.

**TRIAL:** Submission of Issues. An instruction which declares that
9    plaintiff may not recover if a certain condition,—i. e., the slip-
periness of a walk,—was the result of plaintiff's own act, neces-
sarily does not prevent the submission of the issue whether such
condition did exist.

**APPEAL AND ERROR:** Sufficiency of Assignment. An assignment
10    (or what perhaps ought more properly to be called a statement
of error) is wholly insufficient which simply asserts that the
court erred "in refusing to give requested Instructions 7, 8, and
9."

**MASTER AND SERVANT:** Limitation on Assumption. Instruc-
11    tions are properly refused which require the servant to assume
the risk arising from the master's negligence.

**MASTER AND SERVANT:** Failure to Plead Assumption. A master
12    may not properly ask instructions as to assumption of risk,
when he has pleaded no such defense.

**MASTER AND SERVANT:** Inconsistent Attitude of Master. A
13    master may not take the position that he was wholly free from
negligence because the condition which is alleged to have in-
jured the servant came into existence almost at the instant of
the injury, and also the position that said condition had existed
for a long time, and the servant had assumed the risk attend-
ing such long-standing condition.

**TRIAL:** Verdict—$6,000—Excessiveness. Verdict for $6,000 for per-
14    sonal injury reduced to $4,000.

*Appeal from Polk District Court.*—W. S. Ayres, Judge.

June 24, 1918.

Plaintiff claims he was injured because the defendant,
his employer, was negligent in not providing him a safe
place wherein to work. He has verdict and judgment, and
defendant appeals.—*Modified and affirmed.*

*Miller & Wallingford* and *Oliver H. Miller,* for appellant.

*J. W. White* and *Thos. A. Cheshire,* for appellee.

SALINGER, J.—I. In so far as Instruction 12, offered, withdrew the allegation that defendant permitted the place where plaintiff was injured to become unsafe from deposits of grease, the instruction was given because the court eliminated grease.

The instructions eliminate every charge of negligence except two: First, that defendant permitted its platform, at the point where plaintiff was injured, to become unsafe and dangerous, because of deposit thereon of particles of glue, which made the surface of the platform at that place "very slick," knowing that plaintiff, in the performance of his work, would be required to walk upon, pass over and upon the platform at that place; second, that defendant permitted water to fall on this platform at the point where plaintiff fell, and there freeze and form ice. It is complained there was no evidence to support either of these claims.

II. We gather appellant claims the court should not have submitted the case to the jury at all, because it had charged that plaintiff could not recover if his injury was due to a deposit of glue made by himself or his fellow servants, and because the evidence shows conclusively that his injury was caused by nothing but glue thus deposited. Whether the jury was bound to find that the injury was due to such deposit, we consider elsewhere. For present purposes, it suffices to say that, even if that were so, there would still be a case for the jury, if it might find that the place where plaintiff was working when injured, was unsafe because of ice formed there. Whether ice made said place unsafe is considered elsewhere.

III. If we assume that a conclusive showing of glue so

deposited would force a direction for defendant, it must
still be determined whether the jury was bound to find that
the injury suffered by plaintiff was due sole-
ly to glue deposited by himself or his fellow
servants.

1. EVIDENCE:
positive asser-
tions against
physical facts.

It must be admitted that, if nothing is to be considered
except an answer to a peculiarly framed leading question,
answered by plaintiff on cross-examination, it would have to
be held the injury of plaintiff was caused by glue deposited
by himself or Israel so recently before the injury as that de-
fendant had no opportunity to remove the glue, even if that
was its duty.  But in our opinion, this one answer in cross-
examination does not take from plaintiff the right to have
the jury consider, in connection with that answer, all the
testimony adduced by plaintiff, and the physical facts dis-
closed by the evidence.  A careful examination of the record
as a whole satisfies us that, though plaintiff did answer this
one question as he did, the jury might rightly find, upon the
evidence as a whole, that the condition of plaintiff's work-
ing place was due to deposits of glue and formations of
ice that had been making and forming, off and on, for days.
Without elaborating upon the testimony, we have to say the
jury could find the "slickness" of the place where plaintiff
was injured had existed for and on three or four days prior
to the injury, and on every morning on which plaintiff
worked; that this place was "never clear from glue," except
"a couple of times" when the weather was not cold; that
more or less glue was falling on this place every time that
sacks of glue were trucked.  In a word, the jury might find,
upon the evidence as a whole, that the conditions that
caused plaintiff to be injured were constant and of quite
long standing.

The discussion just had disposes, also, of an isolated
statement on part of the witness Israel that he does not be-
lieve there was any ice present the night before plaintiff was

injured, when barrels were being taken out; and of like tes-
timony on part of the plaintiff.

IV. Originally, the plaintiff claimed that ice was formed
by water from melting snow and ice, which was gathered on
the covering of the platform on which plaintiff was hurt;
and that such water ran through the covering, and caused
ice to form on the platform. On the request of the defend-
ant, this was withdrawn. But it is true that, while this
eliminated water gathered on the covering and running
through its cracks, the jury was still permitted to say
whether, in some manner, defendant permitted water to fall
on this platform, and there to freeze and form ice. And the
next complaint is that there was no evidence to support a
claim that any sort of water was in any manner permitted to
fall on the platform, and there freeze and form ice.

Plaintiff and his witness Israel testified that there was
a covering over the platform, and that water dripped upon
this platform from said covering. They explain that this
was due to water leaking from pans handled on said upper
platform, or covering. To be sure, this is not evidence to sup-
port the allegation of the petition as it stood before the
court narrowed it. But it is evidence that some kind of
water in some way fell upon the platform on which plaintiff
was injured; and so far, the instruction given does not lack
support in the evidence. Both said witnesses, or the two
between them, add that, on the morning on which plaintiff
was injured, and on all mornings in freezing weather, this
dripping made the lower platform "slick," frosty, and slip-
pery; that ice from dripped water was present that morning;
and that the weather at this time was freezing weather.
We do not overlook the claim that the ice was of such recent
formation as that failure of defendant to remove it was not
negligence. But that is a distinct proposition, to be con-
sidered by itself. Whatever immunity this may create for
defendant, whatever excuse there may be for not removing

ice, if there is evidence that it fell and froze, an instruction that submits whether it fell and froze is not erroneous for lack of support in testimony.

V. It is argued that, even if ice or glue had been upon the platform where plaintiff was injured for so long a time as that it may not be said the injury was due to glue deposited at the time of the injury, and so long as to charge defendant with knowledge of its existence, that yet the place where plaintiff was injured did not have a heavy coat of ice, and was just a reasonably slippery place; wherefore, the place was not perceptibly unsafe. We think that, under the evidence, it was a question for the jury whether ice and glue had been on this place for a sufficient length of time and in such manner as to charge defendant with notice thereof.

The jury could find, from the testimony as a whole,—although a contrary conclusion might have been reached, also, —that it was the duty of neither plaintiff nor of Israel to clean the place where plaintiff was hurt. Be that as it may, as all claim for the failure of plaintiff to clean the place is bottomed on the argument that defendant did not know, and in the exercise of reasonable care could not have known, of the presence of ice and glue, our holding that the jury could find defendant did or ought to have known, disposes of the contention that defendant is benefited by the failure of plaintiff to clean the place.

VI. The jury could find, from the testimony as a whole, notwithstanding there was some from which contrary inference can be drawn, that it was not the duty of either Powers or Israel to clean the place where plaintiff was hurt.

VII. Without setting out the evidence, we have to say that we have read it; and that, whatever may be the effect of it, the jury could find either that Israel was or was not a fellow servant of plaintiff, or find that he was a vice-principal.

VIII. The plaintiff made a statement in writing to one

Mahaffey.   We may assume it conflicts with testimony given by plaintiff and weakens it.   But, in view of explanations made by plaintiff, and of testimony as to the circumstances in which the statement was made, this conflict and its effect upon the case for plaintiff was for the jury.

IX.   Appellant, in dealing with Errors 36 to 40, declares, in Proposition 4, that "the court erred in sustaining plaintiff's objections to questions propounded by defendant to Dr. Leir and to Dr. Stoner on cross-examination, and in sustaining plaintiff's objections to questions propounded by defendant to Dr. Stoner when called to the stand as a witness on the part of defendant, for the reason that the plaintiff had waived the prohibition of the statute."   This is, in effect, the naked, "old-fashioned assignment of errors," in a very broad, general, and loose form.   No one can, from reading it, have the slightest idea of just what is presented for review.   The argument of the proposition deals with a large number of exclusions, and fills some 14 pages of print. Notwithstanding this great elaboration in argument, we are of opinion that, under the rules, Proposition 4 may not be considered.

2. APPEAL AND ERROR: argument in lieu of brief point not allowable.

It was said, in *Mennenga v. Mennen*, 182 Iowa 1147:

"Most of the remaining assignments of error are simply restated in the brief of counsel, but are not argued, and must, therefore, be considered as waived."

We are in no doubt that the mere restatement of an "assignment of error," and not argued, presents nothing for appellate review.   But, if any inference may be drawn from this language that the mere restatement of an assignment of error *will* warrant such review if the restatement *is* argued, the language should be limited, to exclude such an interpretation.   To give it that construction will overrule quite a number of our decisions, and disregard the rules of presentation.   Section 53 of these rules demands that the brief

shall, among other things, contain, "under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration;" and that "no alleged error or point not contained in in this statement of points shall be raised afterwards." Section 55 provides that the brief "*may* be followed by an argument in support of such brief, which shall be distinct therefrom, but shall be bound with the same. The argument shall be confined to a discussion and elaboration of the points contained in the briefs in the order stated.". These rules bear but one construction: not that an assignment of error or restating it is sufficient, if elaborated in the argument, but that argument in the manner provided by Section 55 is optional, and the right to review depends, not upon elaborating the mere stating or restating of an assignment of error by the argument, but upon presenting, under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration. That this is so is made plain by the penalty:

"No alleged error or point not contained in this statement of points shall be raised afterwards, either by reply brief or in oral *or printed argument.*"

The statement of an error relied on, in the point demanded by the rule, and in rule manner, is essential. Failure to make it cannot be atoned for by argument. The rule itself says, in terms, that an error shall not be available *in argument* if there be an omission to furnish the rule brief point or proposition. And see *Wine v. Jones,* 183 Iowa 1166.

It is, however, not amiss to add that many of the exclusions complained of are purely repetitions of what the witnesses had, at some stage or other of the trial, already been

permitted to testify to; and that, moreover,
all that could have been accomplished by admitting the rejected testimony would be to strengthen the complaint of the appellant that the verdict was excessive. As we agree to that contention, the exclusion was, in any view, harmless error.

3. APPEAL AND
ERROR: exclusion of unnecessary
evidence.

X. Proposition I complains that the statement of the issues, or rather, the claims made by the plaintiff, included claims unsupported by any evidence. If we assume that this is so, it does not follow, as plaintiff claims, that doing so was misleading, and gave the jury an opportunity to base its verdict upon something that had no support in the evidence. Though the jury was told all that was claimed on paper, this was immediately followed by an instruction which eliminated all but two charges of negligence, and told the jury that nothing but these two were submitted to it. If error at all, it is not reversible error to include in the preliminary recital every claim that is made in the petition, even though it is conceded, and the court says elsewhere in the charge, that there is no evidence to support some of the paper claims recited. It is not the function of the part of the charge which states the claims of the parties, to deal with what must be proved. *State v. Chambers,* 179 Iowa 436. We hold that stating to the jury all that plaintiff claims, when followed by a correct statement of just how many of these claims alone may be considered by the jury, constitutes no reversible error.

4. TRIAL: reciting claims
and stating
issues.

XI. Instruction 2 charges, in effect, that plaintiff cannot recover, unless he shows by a preponderance that defendant permitted the platform to become unsafe, by deposits of glue or the formation of ice; that this was the proximate cause of the injury to plaintiff, and damaged him in some amount; and

5. TRIAL: stating
ultimate facts
for recovery.

that plaintiff is free from contributory negligence. The only complaint made of this instruction may be divided into two parts. The first is that "the negligence referred to therein was not a proper basis upon which to predicate liability of the defendant." We are at a loss to understand why the negligence to which the charge refers is not a proper basis for making defendant liable, if such negligence be proved. The other complaint is that "no exception nor qualification was made or taken in such instruction, so as to correctly advise the jury as to just what constituted negligence on the part of the defendant." To define negligence was no part of what this instruction assumed to do. It confined itself to a statement that plaintiff could have no recovery unless he proved the matters recited in the instruction. In such an instruction was not the place for advising the jury "as to just what constituted negligence on the part of defendant." We think, too, it is fairly clear that the instruction refers to negligence consisting of letting the platform become unsafe and dangerous by deposits of glue or the formation of ice. If, in addition, defendant thought it desirable to have added "just what constituted negligence on part of the defendant," the case would be stronger now had such a request been made.

XII. It may be assumed that Instruction 5, which defines what would constitute actionable negligence, does not have the qualification that defendant would not be liable if the platform became unsafe and dangerous 6. **Trial:** omission in one supplied by insertion in another. by reason of some act of the plaintiff. Be that as it may, Instruction 7 cures all that completely, by charging that "the defendant would not be liable because of any glue on said platform in the loading of said glue on the two days in question by the plaintiff and the witness Israel."

XIII. A proposition on appeal may fail because the exception below is less broad than is the complaint made

on appeal—another way of saying that review of an objection

**7. Appeal and error: "points" limited to objections in trial court,**  made here to an instruction is, even if the point is properly made, yet limited to the complaint lodged below by exceptions to such instruction. On the other hand, so much of the exception as is not made the basis of "Brief Point" or "proposition" is not for review.

It is complained now that Instructions 5 and 7, given, are in conflict with each other, and the two are in conflict with Instructions 1 and 2. No exception to the 5th instruction complains of it for conflict. No

**8. Trial: conflicting instructions.**  exception asserts that any instruction is in conflict with any other. Instruction 7 is not excepted to at all.

Aside from that, there is, in fact, no conflict. The exception lodged against Instruction 5 is that it erred in failing to tell the jury that, if the platform became unsafe and dangerous through the act of plaintiff or his fellow servant, defendant would not be liable. Now, part of Instruction 7 tells the jury that. And if No. 7 conflicts with No. 5, the conflict must arise because Instruction 7 thus tells the jury the very thing for failure to tell which Instruction 5 is complained of. In other words, the position of appellant is that, if an instruction fails to say something that it should, and such failure is complained of, then, if another instruction supplies such defect, this creates a conflict between the two. A related argument is offered in support of the claim that Instructions 1 and 2 are in conflict with Instruction 5. On analysis, it is again found to be the argument that something that should have been given was omitted from Instructions 5 and 1 and 2; that such omission permitted a recovery though plaintiff was at fault; and that this makes a conflict with Instruction 7, because the last says there may not be a recovery if plaintiff is at fault.

The instructions, taken together, charge harmoniously upon what the defendant is and is not liable for.

We are unable to see how Instructions 5 and 7 conflict with Instructions 1 and 2. The last but state what the paper issue is, and that plaintiff has the burden of proof upon certain of the claims made in the petition.

XIV. We have some difficulty in apprehending it, but gather one complaint to be that, having charged defendant was not liable for injury due to deposit of glue by plaintiff, it was error to submit to the jury whether the platform was slick, since plaintiff had made it slick. It is one thing to charge that a working place is not slick—quite another that defendant was not liable though it was slick. A place made dangerous by the deposit of glue is not less unsafe because plaintiff makes the deposit. Therefore, even if it be true that slipperiness was due to an act of the plaintiff's, this will not condemn an instruction which submits whether the place was slick, for being without support in the evidence. As said, there might be abundance of evidence that a platform was slippery, even though it also appeared that plaintiff was to blame therefor. It was not error to let a jury find that a place which was slippery, was slippery. The only error that could occur would be to permit the jury to pay the plaintiff though he was the one who made the working place unsafe. But as the instructions expressly held the plaintiff could not recover if injured through a deposit of glue made by himself, certainly no such error was committed.

9. TRIAL: submission of issues.

XV. The third proposition charges the court erred "in refusing to give Instructions No. 7, 8, and 9, requested by the defendant." We do not think this proposition is more than a mere, naked, old-fashioned assignment of errors, too general in form. If we may aid the complaint by what precedes it, then all that is complained of is that the

10. APPEAL AND ERROR: sufficiency of assignment.

said offered instructions were conflicting. Surely, appellant may not get any advantage from having offered instructions that were conflicting.

Passing all that, we find no error in rejecting these instructions. In effect, they deal with assumption of risk. With one exception, to be noted later, these offered instructions do not differ in substance from Instructions 7 and 9, given by the court. In these instructions the court charged that plaintiff assumed all the risks and dangers incident to and inherent in the employment in which he was engaged when injured. In Instruction 9, and in dealing connectedly with the subject of contributory negligence, the jury was told:

11. MASTER AND SERVANT: limitation on assumption.

"It was the duty of the plaintiff to exercise ordinary care for his own safety * * * and to act as a careful and prudent person would, in passing over and along said platform; and if you find that the plaintiff did not use his senses, and act with such reasonable care and caution, then plaintiff cannot recover, although you may find that the defendant was negligent."

The one thing in which the instructions offered and those given differ, is that the offered ones leave out the plaintiff did not assume risks of any dangers arising from negligent acts of the master, if any. This omission alone justified the refusal of the offer, and with this proper qualification added, all that the offered instructions ask was, in effect, given.

There are two additional reasons that justify the refusal of these instructions:

A. The answer is a general denial, except that it admits corporate capacity, as charged; that plaintiff was in the employment of defendant when he met his injury; an inferential statement that the injury was accidental; and an

12. MASTER AND SERVANT: failure to plead assumption.

express statement that this injury was caused by no fault on part of the defendant. Wherefore, the instructions offered inject assumption of risk, when the answer gave no basis for submitting such an issue. That this may not be done, is both the statute and the common law. See *George v. Iowa & S. W. R. Co.,* 183 Iowa 994.

B. For the purpose of making the point that deposits of glue and ice were so recent as that defendant was not negligent for failing to remove same, it is contended that, if either glue or ice were present, they came upon the platform almost at the instant when the plaintiff was injured. Now, if that be true, for the purpose of showing that there was no negligence in failing to remove, it must follow defendant is in no position to say that the glue and ice were constantly present, and that, therefore, the plaintiff assumed the risk of injury from such deposit.

13. MASTER AND SERVANT: inconsistent attitude of master.

XVI. The court overruled a motion for new trial, which included an assignment that the verdict, one for $6,000, was excessive.

The fracture suffered was of the kneecap, and ran straight across, from right to left. There is medical testimony that plaintiff will not get over his lameness, meaning such interference as there will be with full power of motion, and it is said that this is so because the injury is not like one to bones of the arm or to ordinary bones of the body, and is not repaired in the same way. The essence of it is that there may be a degree of lameness which might, in certain conditions, be permanent, say on rough or slippery going, extreme fatigue, or during changes of weather. One witness says that, in stating plaintiff would get over his lameness in about two years, he means that; in his opinion, he will so get over the soreness and sensitiveness as that there ought to be no limping. Medical witnesses testify the injury would cause

14. TRIAL: verdict: $6,000: excessiveness.

a shortening, not in the limb, but in the tendons; that the latter would not give as well as before, but this shortening would be permanent; and that there would be a permanent restriction of movement. But some of the same witnesses, said that these muscles or tendons would become more elastic by use; that, with use of the limb, the stiffness would disappear, to some extent; that only extreme power to move would be affected; that, for ordinary labor and things of that kind, the limb would be just as good, as normal; that there should be no limp, because ordinary motion and walking would not be interfered with; that while, in walking, leaning, or bending, there would be an interference, to some extent, ordinary walking would not be interfered with; that, in about a year and a half or two years, "it ought to be cleared up" so that plaintiff would have practically the same power he had before that; and, while he might be affected in running a foot race, he would not be affected in ordinary walk; that plaintiff would have a very useful limb, as good as an ordinary one could be after an operation of this kind, and would be able to do almost any kind of work without discomfort.

It may be fairly said, on the whole, the jury could find that probably there would always be some limitation of motion. The medical testimony as a whole tends to show very strongly that there has been a good union; that there is no interference with present use of the limb; that the kneecap is joined and is well; that the injury healed nicely; and that, at present, there is no pain; that the kneecap performs substantially the same functions as before the injury; that, while there is, at present, some stiffness, it would not remain for more than a year, or until absorption becomes effective; that the stiffness will disappear, in time, to some extent at least. The strongest contrary position is that the ligament tissues will never be as strong as bone tissues, and will be more easily fatigued.

The fair weight of the testimony, taking into considera-
tion that there is always a difference in size between the left
and right kneecap, is that the knee is now not far from nor-
mal in size, although, apparently, the left knee is slightly
larger than the right in area.    The jury could believe the in-
jury was originally so serious as to necessitate remaining in
the hospital 41 days and being confined in bed for 40 days;
that, during the time when plaintiff was confined to his bed,
he had to lie on his back; that a box extension, the main
feature of which was a pail of sand, weighing 20 or 30
pounds, was swinging on his left leg; that sand bags on each
side were used to keep his leg in shape, and that he had to
stay in one position, because of this weight on his leg, and
that this made him uncomfortable.    It could believe that he
reached his home on February 9th, and first put his left
foot down about two months after that; that, when he
reached home, he remained in bed for about three weeks,
and after that, walked about on crutches; that, for some
six weeks after reaching home, he would sit up for only
about an hour, and then be compelled to lie down; that,
during all this time, his wife nursed and cared for him at
night.    But it appears that, after he reached home, he went
to the office of his doctor at least twice a week, after he was
on crutches.

The jury could find that, at the time of the injury, when
plaintiff was first lifted up, there was pain in the knee.
Plaintiff says that, while in the hospital, this knee was badly
swollen at the point of the injury,—would swell when he
tried to bend it; that he is not able to bend it very far yet;
that, while the doctor was manipulating the knee and bend-
ing it, awful pain was suffered; that he still suffers pain;
and two of his medical witnesses say he will probably suffer
pain during the remainder of his life, especially when the at-
mosphere changes, as from heat to cold, or dry to damp.
Plaintiff testifies not only that he suffered great pain during

the 40 days he was bedfast, and all the time he was in the hospital, but that, after he reached home, he couldn't rest. His wife says that, at night, she bathed his knee in warm water, and he could not rest, and that he suffered in this way for three or four months, after returning from the hospital. Plaintiff adds that, at times, he would lie all night without being able to sleep; and that, for two or three months after he returned home, he didn't sleep an hour in the night, and can't sleep yet.

The fair effect of all the testimony is that there is no present pain of any consequences except when there is great heat or cold, or certain changes of weather; and that, when these changes occur, there is a feeling as though needles were going through the knee; that bad weather would cause pain, especially if there was rough going; but that ordinarily, and as to light work and smooth walking, plaintiff is quite comfortable.

The testimony discloses that something like $312 is the reasonable value of medical services rendered him. It is stated in the petition that plaintiff is unable to state the reasonable value of the expenses incurred for nursing and hospital services.

The expectancy of plaintiff is something over 30 years. But that is material only to the extent that there is permanent injury.

Plaintiff had been earning $1.75 a day. He tried to work, in July, at cutting weeds with a scythe. He worked four days, and had to stay home a month, before he went to work again. This time, he attempted to put up a small bridge; he worked eight days, and then went home and stayed; and then he worked five days at sewer work in October, but couldn't stand it; and has done no work since. Before he went to work for defendant, he worked on bridges, earning $2.25 for eight hours; and he worked at this sort of work every summer for the four years prior to his injury.

Earlier than that, he used to work in a roundhouse, working there two winters, at $2.00 a day. Medical testimony claims that his ability to earn at manual labor in the future would be impaired, in occupations like manual labor requiring that he use his limb a great deal.

We are of opinion that, on careful and impartial consideration of all the evidence, a verdict for more than $4,000 is not warranted. It is ordered that the judgment be reduced to that sum, costs to be paid by appellant.—*Modified and affirmed.*

PRESTON, C. J., LADD, EVANS, and STEVENS, JJ., concur.