LEVI L. WELLS, Administrator, Appellee, v. PARK CHAMBERLAIN, Receiver, et al., Appellant.

APPEAL AND ERROR: Assignment of Error—Sufficiency. A general assignment, to the effect that the court erred in overruling a 26-pointed motion for a new trial, or erred in excluding certain evidence, which exclusion can only be discovered by reading the entire abstract, will be ignored.

1

TRIAL: Instructions—Form, Requisites, Etc.—Assumption of Fact. No assumption of want of due care results from a recital of the degree of care required by the law, followed by the statement that "a failure to exercise such degree of care constitutes negligence."

2

APPEAL AND ERROR: Briefs—Ignoring Assignment of Error. An assignment of error which is in no manner covered in the "proposition or points" required by Rule 53 will be ignored.

3

**TRIAL:** Instructions—Assumption of Fact. Instruction reviewed in its entirety, and held that the reference to a hanging wire "which caused the death of Jesse Wells," did not assume that the death was brought about by a hanging wire.

**NEGLIGENCE:** Instructions—Recklessness and Wilfulness as Elements of Contributory Negligence. Recklessness or wilfulness is not a *necessary* element of contributory negligence, and an instruction which so states or infers is prejudicially erroneous.

**TRIAL:** Instructions—Circumstantial Evidence Cases—Consistency with Other Hypothesis. Circumstances, in order to be sufficient, *of themselves*, to establish liability, must be wholly inconsistent with any other hypothesis than that of liability, and, on request to so instruct, it is reversible error to refuse.

**NEGLIGENCE:** Instructions—Undue Emphasis—Unequal Degree of Care. Whether instructions are prejudicially erroneous which place the duty of ordinary care on plaintiff, and possibly, in effect, on defendant, yet, in addition, call the jury's attention to the dangerous instrumentality which *defendant* was handling, and the "high" degree of care which he should exercise, etc., *quaere*. (The court suggests modification on retrial.)

**TRIAL:** Instructions—Exceptions—Failure to Request Correct Instruction—Waiver. The right to insist on a definite exception to an instruction is not waived by failure to ask a correct instruction on the same point.

**APPEAL AND ERROR:** Briefs—Propositions and Points—Non-Necessity for Argument. Argument *in extenso* is not necessary in order to secure consideration of properly made brief points.

**NEGLIGENCE:** Instructions—Duty to Define Statutory Terms—"Proper Insulation." Statutory terms which carry a technical meaning must, without request, be defined by the court in its charge to the jury, in actions based on injury by reason of the violation of such technical terms. So held as to the term *"properly insulated,"* in the statute governing maintenance of electric transmission lines. (Sec. 1527-c, Code Supp., 1913.)

**APPEAL AND ERROR:** Harmless Error—Instructions—Vital Omission—Overwhelming Testimony. One may not contend for harmless error by reason of the great array of his testimony, when the error in question consists of a *vital omission* in the instruction of a proper guide to the jury in considering such testimony. So held where the court failed to define the statutory and technical term "properly insulated," as applied to electric transmission lines.

ELECTRICITY:   Insulation—Statutory   Command — Evidence.   On
12  the issue whether electric transmission lines were *properly
*insulated*," as required by statute (Sec. 1527-c, Code Supp., 1913),
it may be shown that no material had ever been discovered that
will, when *wrapped* around high voltage wires, prevent the es-
cape of electricity.

*Appeal from Jones District Court.*—F. O. ELLISON, Judge.

JULY 1, 1918.

REHEARING DENIED JANUARY 21, 1919.

THE defendant appeals from a judgment awarding the
plaintiff damages alleged to have been sustained by reason
of the negligence of the defendant.—*Reversed and remanded.*

*E. C. Johnson, C. B. Paul,* and *Barnes, Chamberlain &
Randall,* for appellants.

*George C. Lawrence* and *Wade, Dutcher & Davis,* for
appellee.

SALINGER, J.—I.  The eighth proposition complains
that the motion for new trial was overruled, and a judg-
ment on the verdict was entered.  The motion for new trial
referred to has 26 grounds.  We will not
consider complaints so general and vague
as this.

1. APPEAL AND
ERROR; as-
signment of
error: suffi-
ciency.

1-a

There is further complaint that the
court refused to let the defendant show what
is deemed "proper insulation," in electrical technology, and
that it was in this connection other evidence referred to
later was excluded.  We have said, in a very recent case,
that, where a ruling in the taking of testimony is com-
plained of, it is in the power of the appellant to point to
some spot in the record where that ruling is, and that, if
this be not done, we will not go through the record to ascer-

tain whether the ruling complained of was made. The brief refers to certain pages on which we find other evidence excluded, but these exhibit no exclusion of what is deemed proper insulation; and no other reference is made, indicating where it can be found. We may not consider this alleged exclusion.

II. There are many cases cited for the elementary proposition that the instructions should not assume the existence of material matters which are in dispute. Of course, this is not to be done. Was it done? We find in the record that Instruction 4 was excepted to on the claim that its last sentence assumed due care was not exercised. The instruction, after reciting the degree of care due from defendant, concludes: "And a failure to exercise such degree of care constitutes negligence." It seems to us this does not assume that the requisite care was lacking, but is merely a statement of the consequences if it is found not to have been exercised.

2. TRIAL: instructions: form, requisites, etc.: assumption of fact.

There was an exception to No. 8, charging that the first paragraph seems to assume there was a failure on part of defendant to properly insulate its wires. The instruction declares that, if it is found from the evidence that the wire which caused the death of decedent was placed on the transmission wire of defendant by someone other than decedent, and found that the defendant's wires were not insulated, and found that decedent, while rightfully upon the highway, and in the exercise of ordinary care for his own safety, accidentally ran against the hanging wire, or inadvertently took hold of it, and was killed, and it is found that defendant's failure to insulate these wires was the proximate cause of such death, defendant would be guilty of negligence, regardless of the length of time that the wire hung upon the transmission wire. We are unable to see what matter, material or otherwise, is so far assumed to be true.

The instruction continues that if, on the other hand, it is believed from the evidence that decedent placed the hanging wire on the electric wire, or if it is found that said wire was hanging in plain view, and could be readily seen by deceased, and if it be believed that decedent saw the wire, or, in the exercise of ordinary care and diligence, should have seen it, before he touched it, and, with knowledge of its position and condition, failed to exercise that degree of care for his own safety that an ordinarily careful person would exercise under like circumstances, but recklessly or wilfully, and without exercising ordinary care, took hold of the hanging wire to remove it, and was killed, then he would be guilty of contributory negligence, and plaintiff could not recover, even though it was believed that defendant was also guilty of negligence in failing to properly insulate its wire; and the verdict should, in that event, be for defendant. We find that, in the errors relied on for reversal, this instruction is further challenged because it is said to be the entire theory of defendant's case that decedent was not killed by reason of the hanging wire, but, on the contrary, by attempting to throw a wire over defendant's high tension line. But the only complaint in the brief points is that this instruction assumes material matters which are in dispute, to be true. We are concluded by the presentation in the propositions or points; and whatever vice there may be in Instruction 8. it is not one of them that it assumes disputed matter to be true. A charge which fails to adopt the theory of one of the parties does not thereby indulge in an erroneous assumption of fact.

3. APPEAL AND ERROR: briefs: ignoring assignment of error.

In Instruction 10, the jury is told that, if it believes the high tension wires of the defendant which extended across the highway were properly insulated, so as to be rea-

sonably safe, as suspended or placed, "and that the hanging wire which caused the death of Jesse Wells was placed over the electric wires by someone without the

**4. TRIAL: instructions: assumption of fact.**

knowledge or consent of the defendant, and that said wire remained so attached to defendant's wire for such a length of time, before the injury to plaintiff's intestate, that the defendant, in the exercise of reasonable care, ought to have discovered it, and known of its dangerous condition, and removed it, but failed and neglected to do so, then the defendant would be guilty of negligence in that regard." The exception to this is that the instruction "squarely" assumes that the death *was* brought about by a hanging wire which caused the death of Jesse Wells. We are unable to sustain this exception.

III.   In Instruction 8, the jury was told, in the statement of what would demand a verdict for the defendant, that such verdict was due, among other things, if decedent

"failed to exercise that degree of care for his own safety that an ordinarily careful person would exercise under like circumstances, but *recklessly or wilfully,* and without exercising ordinary care, took hold of the hanging wire to remove it, and was

**5. NEGLIGENCE: instructions: recklessness and wilfulness as elements of contributory negligence.**

killed," he would be guilty of contributory negligence. It is urged that, on the authority of *Mathews v. City of Cedar Rapids,* 80 Iowa 459, *Yeager v. Incorporated Town of Spirit Lake,* 115 Iowa 593, and *Keim v. City of Fort Dodge,* 126 Iowa 27, this instruction was erroneous, in that one who does not exercise the degree of care that an ordinarily careful person would exercise under like circumstances is guilty of contributory negligence, although what is by him done is neither reckless nor wilful.   The instruction was excepted to, and it was urged against its giving that, in a second paragraph thereof, the court charged that, if deceased reck-

lessly or wilfully took hold of the hanging wire, he would be guilty of contributory negligence; whereas the language just preceding such words is a proper statement of the law, which should not be modified by the use of such words as "recklessly or wilfully."

We think so much of this instruction was erroneous. The appellee answers that the case turns on proximate cause, and not on contributory negligence; and that, at all events, as there were no eyewitnesses, therefore a presumption was raised that there was no contributory negligence; also, that the charge, as a whole, was correct, because the words objected to were but additions to a proper statement that want of ordinary care constitutes contributory negligence. It appears to us to be plain that neither meets the fault in this instruction.

IV. The appellant presents that it was entitled to an instruction covering the rule that, if conclusions other than those urged by plaintiff as to the cause of the injury may reasonably be drawn from the facts in evidence, then the evidence cannot be said to support that conclusion; and for this it cites the familiar "equipoise" cases. We have recently passed upon this question in the case of *George v. Iowa & S. W. R. Co.,* 183 Iowa 994, which, in defining what does create equipoise, as matter of law, makes clear that, ordinarily, it is for the jury to say whether the evidence is in equipoise, and that there is a case for the jury if reasonable men may, on the evidence, differ on whose theory is the better supported. If, then, we have here—and we do have—a pure case of circumstantial evidence, and upon such evidence a jury might as reasonably draw the conclusions contended for by defendant as the ones upon which plaintiff insists, it may become the duty of the court to charge on how the burden of proof in a circumstantial evidence case must be dis-

6. TRIAL: instructions: circumstantial evidence cases: consistency with other hypothesis.

charged; and if it be not done, when there is proper re-
quest therefor, the refusal so to charge will be error. The
defendant did ask the court to charge that plaintiff's case,
as presented by the evidence, is bottomed solely upon cir-
cumstantial evidence, and, unless it found that the cir-
cumstances relied upon by plaintiff as sustaining his theory
of the case are wholly inconsistent with any other reason-
able hypothesis as to the manner in which decedent came
to his death, then plaintiff has not met the burden of proof,
and the verdict must be for the defendant. For the pur-
pose of stating the rule which presumes freedom from con-
tributory negligence where there are no eyewitnesses, the
court did say what amounts to stating that the case was
wholly one of circumstantial evidence. But this is all it
did in the matter. We are of opinion that the instruction
requested should have been given.

V.  Instruction No. 2 charged the jury that the de-
ceased "would only be held to the exercise of ordinary care
and diligence." The same thought is found in Instruction
3. In Instruction 4, the jury was told that

7. NEGLIGENCE:
instructions:
undue empha-
sis: unequal
degree of
care.

one in the business in which defendant was
engaged was bound to exercise a high de-
gree of care, prudence, and judgment, to
avoid injury to those who might come in
contact with the production or distribution of electricity
by defendant; and that the care required of the defendant
should be in proportion to the character of the acts to be
done, the dangers involved, and the magnitude of the in-
jury or damages that might arise from the want of such
care. In Instruction 6, it was charged that, in the busi-
ness defendant was engaged, the law imposes a duty upon it
to properly insulate its wires, and, if this be not done, an
obligation to use "such other means of protection from dan-
ger as reasonable care would require, including such ex-
aminations or inspections at such times as reasonable pru-

dence and care would require, considering the dangers, if any, involved to those who might be upon the highway or any part thereof." In Instruction 7, the jury is told that decedent was not relieved from exercising that degree of care and caution for his own protection and safety which an ordinarily careful and prudent person would exercise under like or similar circumstances. No. 8 requires of the decedent the exercise of ordinary care for his own safety. Instruction 10 exacts not more of decedent than the exercise of reasonable care. These instructions on the respective care due from each of the parties were challenged below: First, on the ground that they required ordinary care only of the decedent and greater care than that of the defendant, whereas it should have been charged that neither was to be held to more than the exercise of ordinary care; second, that, while the instructions in question failed to explain that the care due from decedent must be proportionate to the injury to be apprehended and the dangerous instrumentalities with which he was dealing, just that degree of care was exacted of the defendant—and the exceptions assert this was error, because both parties were bound to exercise care in proportion to the character of the acts to be done, the dangers involved, and the magnitude of the injury or damages that might arise from the want of such care. In the brief, the point is made that, on the authority of *In re Estate of Townsend*, 122 Iowa 246, and *Gray v. Chicago, R. I. & P. R. Co.*, 160 Iowa 1, instructions should be so written as not to give undue prominence to the duties of one party and not sufficient prominence to the duties of the other. The ultimate complaint is that the charge holds decedent to the exercise of ordinary care and diligence only, but fails to limit in like manner the care due from defendant, and tends to hold it to a much higher degree of care than plaintiff.

Appellee insists that, if there be error in these instructions, the complaint may not be considered: First, because

no instruction was asked upon this point; and second, because "nowhere is there a line of argument

**8. TRIAL: instructions: exceptions: failure to request correct instruction: waiver.** upon the thought expressed in the assignment of error, and under the rule, we are not required to argue." Both contentions have been disposed of in this court against the appellee. *State v. Brooks,* 181 Iowa 874, holds that, where an exception clearly advises the court in advance wherein it is claimed that a proposed charge is faulty, a right of review of the propriety of the instruction given is not waived by a failure to ask instructions upon the point. In *Powers v. Iowa Glue Co.,* 183 Iowa 1082,

**9. APPEAL AND ERROR: briefs: propositions and points: non-necessity for argument.** it is settled that, where brief points or propositions are made in the manner prescribed by rule, review must be granted though there be no argument *in extenso.* The point is not free from doubt, and we suggest that this instruction be amended on retrial.

VI.  Chapter 94, Acts of the Thirty-third General Assembly (Code Supplement, 1913, Sections 1527-c, 1527-d),

**10. NEGLIGENCE: instructions: duty to define statutory terms: "proper insulation."** requires that the franchise holder shall use only strong and proper wires, "properly insulated." In Instructions 5 and 6, the jury was merely told that it was the duty of the defendant to have the wires in question "properly insulated," and that certain consequences attached if they were not "properly insulated" No definition of what was proper insulation, within the meaning of the statute, was asked or given. Appellant contends this was error. Now while, in *Union Scale Co. v. Machinery & Sup. Co.,* 136 Iowa 171, 174, we reversed because there was a failure to define the term "abandonment of a lease," as used in the law, and because the law had given it a technical meaning, the case is not a controlling authority, because there, there was a request to define the

term, and here there was no request. But in *Kirchoff v. Hohnsbehm Creamery Sup. Co.,* 148 Iowa 508, at 511, there was no request, and we held that it was the duty of the court to tell the jury what would violate a provision of law that a planer should be "properly guarded,"—what the meaning of these words was, in the law. In *Murray v. Daley,* 164 Iowa 612, at 624, in which there was no request, we condemn an instruction because it has nothing "which properly indicates what sort of contrivance would, in law, be considered a proper guard, and the least that may be said is that the trial court should have defined the requirement of the statute, so that the jury could have been able to say whether the machine was properly guarded." The *Kirchoff* case is cited in support. So is *Miller v. Cedar Rapids Sash & Door Co.,* 153 Iowa 735; but we cannot see that this last case has any bearing on the question. As we understand it, appellee has no answer, save to say, first, that the cases just referred to deal with provisions in a factory act, and that there is a distinction because such acts "deal with indefinite and uncertain conditions," and that, therefore, it was not the duty of the court to construe the meaning of the words used in such statutes; second, that, on the whole, the case for the plaintiff is so conclusive that, if there was error in not defining the term "properly insulated," the record demonstrates such error to be harmless. We are unable to see a distinction, because the words here under consideration are not found in a factory act. If there be a distinction, it seems to us more necessary to define what is "properly insulated," within a statute, than to define words such as "proper guards," or "properly guarded." Insulation of high tension wires is surely a more technical subject than the proper safeguards of machinery in a factory, against injuring operatives. If "proper guard" or "properly guarded" come within Subdivision 2 of Section 48 of the Code, certainly the words "properly insulated" do.

A guard to prevent the cutting off of the finger of a saw operator is surely popularly better understood than proper insulation of high transmission wires.

Now, as to the argument that the conclusive character of the plaintiff's testimony as a whole proves no prejudice resulted from failure to define said term. No matter how conclusive the case for the plaintiff would be if there was a failure to have what the law deems proper insulation, yet he would have no case if the jury could find that there was proper insulation. Therefore, the "conclusive proof" theory will not meet the situation.

11. APPEAL AND ERROR: harmless error: instructions: vital omission: overwhelming testimony.

We held, in *State v. Peirce*, 178 Iowa 417, that one who does not dispute that the evidence as it stands abundantly supports the verdict, may yet contend that, if no error had been committed, the verdict might have been for either party; that, though it be admitted the scale declared a given weight, it may be urged that the scale was defective, or tampered with. In *Yarcho v. Chicago, R. I. & P. R. Co.*, 183 Iowa 1180, we hold that, though a conclusion of fact by a justice of the peace may not be reviewed on writ of error, the writ may be maintained upon showing that there was error in the taking of testimony; that, though the conclusion of fact is not reviewable, and is right if the foundation for reaching it was properly obtained, it may be urged on the writ that what is otherwise conclusive is not so if laying the foundation for the conclusion was faulty. It is no answer that the instructions were too favorable to the appellant, the reasoning being that, when wire is not insulated as required by law, the defendant is responsible as matter of law, and the court should have said to the jury that, as matter of law, the wire was not insulated as required by law. This is a reasoning in a circle, which is merely an amplification of the argument that the conclusiveness of the proof as a whole made this error nonprejudicial. If

there be any duty to define what is proper insulation, within the meaning of the statute, the duty is created because, no matter how strongly the proper insulation is required, and no matter how strong the case otherwise is, there is no liability unless there is a failure to have proper insulation. The definition is required so that the jury may intelligently find upon the vital question. It is only when it has found there was no proper insulation that the case against the defendant becomes conclusive. That it remains conclusive *if* the proper light to reach the conclusion is given the jury cannot meet that the jury is allowed to reach the vital conclusion without being afforded proper light.

Appellee asserts that *State v. Louisville & N. R. Co.,* 177 Ind. 553 (96 N. E. 340), decides that the trial court in this case did not err in not defining what was proper insulation. We cannot so read the case. It involves an application of the rule that statutes shall not be held to be unconstitutional if any reasonable interpretation will avoid so holding. In applying this rule, it is held that a statute which makes it unlawful to use any locomotive which "is not properly equipped with an efficient automatic device for ringing the bell * * * such device to be at all times kept in proper working order," is not void for indefiniteness on the ground that the words "proper," "properly," and "efficient" were relative terms, and imposed no standard for determining when a crime was committed under the act, "since the thing that was definitely required was a continuous ringing of the bell, and the words quoted might be eliminated as surplusage."

We are unable to see what application *Ingebretsen v. Minneapolis & St. L. R. Co.,* 176 Iowa 74, has to the point now under consideration. Its holding is that, where it is complained of an instruction that it did not tell the jury, in assessing damages, to limit itself to the present

value of the sum found, such omission may not be complained of on appeal, and said:

"The instruction in the form given does not inhibit or negative a computation of damages on the basis of present worth, and we cannot assume that the jury did not, in fact, so reach its determination. Such, indeed, would naturally be the course of intelligent jurors in estimating a sum which would 'fully and fairly compensate' the plaintiff for the wrong done him."

VII. A witness otherwise competent was asked whether or not it is possible "for these service wires" to be insulated; and objection that it was incompetent, irrelevant, and immaterial, did not tend to support any issue in the case, that the law fixed the requirement and conditions, that, if the wires cannot be insulated, they cannot be used, was sustained. To inquiry whether there was any known material which may be used in high tension wires, on the wire itself, that will prevent the escape of electricity under pressure of 13,200 volts, the like objection was made and sustained. It is presented that this excluded proof that there was no known substance with which a high tension wire may be wrapped so as to prevent the escape of high tension current. It is answered that the law demands proper insulation, and, if that is impossible, the defendant must simply refrain from using its franchise and placing high tension wires. In our opinion, the requirement of the statute that the holder of the franchise must furnish proper insulation did not require the doing of impossibilities, and did not make the right to use the franchise lapse because there was a failure to do the impossible. It was a charged negligence that wires in question were not insulated or otherwise protected so as to guard the traveling public against a charge of electricity from said wires; that the death of decedent was caused by the negligence of defend-

12. **ELECTRICITY:** insulation: statutory command: evidence.

ant. Now, certainly, the defendant could show by a competent witness that mere failure to wrap the wires in a given way was not a failure to furnish proper insulation, and certainly, showing that insulation by such a method was impossible would tend to show that defendant was not negligent.

The judgment appealed from must be reversed.—*Reversed and remanded.*

PRESTON, C. J., LADD, EVANS, and GAYNOR, JJ., concur.