LIZZIE J. SEDDON et al., Appellees, v. A. J. RICHARDSON, Administrator, Appellant.

**EVIDENCE: Opinion Evidence—Competency of Witness.** Allowing a witness to testify to the value of services without a showing of competency, or after an admission of a total lack of knowledge as to such value, is manifestly erroneous.

**TRIAL: Instructions—Improper Assumption of Fact.** Prejudicial error results from directing the jury, on conflicting evidence, that a claim sued on *was* an "open, current, and running" account.

**TRIAL: Instructions—Unsupported Issue.** The submission to the jury of an issue which is wholly without support in the evidence is erroneous.

**WORK AND LABOR: Family Relations—Compensation.** On the issue whether services were rendered as a member of the family, and with the mutual expectation of *paying* and *receiving* compensation

therefor, the court must not assume, in his instructions, that a statement by the recipient that he would pay for the services would necessarily establish the expectation of the party rendering the services to *receive* compensation.

**TRIAL:** Instructions—Undue Elaboration on Nonsubmitted Issues. The court should not elaborately instruct on questions not submitted to the jury.

Headnote 1: 22 C. J. p. 516. Headnote 2: 4 C. J. p. 1038; 38 Cyc. p. 1646. Headnote 3: 38 Cyc. p. 1618. Headnote 4: 38 Cyc. p. 1646; 40 Cyc. p. 2856. Headnote 5: 38 Cyc. p. 1612.

*Appeal from Appanoose District Court.*—W. M. WALKER, Judge.

OCTOBER 20, 1925.

ACTION to establish a claim for services against the estate of Peter Barker, deceased. From an order allowing the claim as fixed by a jury, the administrator appeals.—*Reversed.*

*H. E. Valentine,* for appellant.

*Wilson & Smith,* for appellees.

ALBERT, J.—Defendant was the duly qualified and acting administrator of the estate of Peter Barker, deceased. On the 7th day of May, 1923, claimants filed in the office of the clerk of the district court of Appanoose County, Iowa, a claim against the above named administrator for services in washing, boarding, cooking, and caring for Peter Barker from February 14, 1912, until May 30, 1921, less two years of an interval, at the rate of $20 per month for 87½ months, totaling $1,750.

The claimant Lizzie Seddon assigned and transferred her claim to the co-claimant, her husband. Later, the claim was amended to conform the pleadings to the proof, stating that the estate was indebted to him in the sum of $1,750 for services as above specified from February 14, 1915, to May 30, 1921. Claimant further states that, in filing said claim for 87½ months of service at $20 per month, he had in mind the fact that the decedent had not been continuously, during the entire 87½ weeks

[months], boarding at his house, as he had been absent from the town of Mystic approximately six months in the aggregate; that in reality the fair and reasonable value of the services rendered by the plaintiff and his wife was the sum of $30 per month: and he prays judgment in the sum of $1,750, with interest from November 30, 1921.

The administrator answered, and, in addition to the denials imposed by law, pleaded that the claim was barred by the statute of limitations, and that the services rendered by claimants were fully paid and satisfied on March 21, 1921, when claimants settled with Barker on a note and mortgage for $500 held by Barker against them. The administrator later amended his answer by pleading that the plaintiff W. A. Seddon was the brother-in-law of the deceased, and that whatever services were rendered by plaintiffs were rendered because of such relationship, and were gratuitous, and were rendered without, at the time of such rendition, any expectation on the part of the claimants of receiving payment therefor, or without any expectation on the part of the deceased to pay for such services, or without any agreement on the part of deceased to pay therefor; that said services were rendered voluntarily, gratuitously, and because of the relationship existing between them.

As a reply to this amendment, plaintiffs deny generally and specifically all allegations therein, and deny that the services were gratuitously rendered and that they were rendered without expectation on the part of either the claimants or Barker that they were to be paid for.

Under the issues thus made, the case was tried to a jury, which rendered a verdict for the plaintiffs for the full amount.

Briefly stated, the facts necessary to a favorable consideration of this matter are that Peter Barker was a farmer, living several miles from the town of Mystic. He was married to the sister of the plaintiff W. A. Seddon, who predeceased him by many years. Barker sold his farm, moved to the town of Mystic, and bought two houses therein. In one of these houses he used two rooms for himself, renting the balance of the house and the other house which he had purchased. His then residence was but a short distance from the residence occupied by plaintiffs herein. He sold these properties and moved from the town

of Mystic sometime in the latter part of May, 1921. It is the claim of the plaintiff, and he introduced evidence tending to support the same, that, when Barker took up his residence in Mystic, he commenced to take his meals with the plaintiffs, and that he continued so to do until he sold his properties, in 1921. It is also the claim of plaintiffs that, in addition to boarding Barker during all of that time, they did his washing, ironing, and mending, and kept his residence clean, from February 14, 1915, to the 30th of May, 1921. They claim that their services to him were worth $30 a month, or reasonably worth $1,750 for 87½ months; and the jury so found.

Many errors are assigned, and we will give attention to those that seem to us of importance.

The witness Lizzie Rhomesburg testified on behalf of the claimants as to the worth of the services. She testified that her son boarded with her, and paid her $7 a week. The question was

1. EVIDENCE: opinion evidence: competency of witness.

then asked whether she considered this fair and reasonable board, and, over objection that it was immaterial, the court permitted her to answer. Up to this time, the witness had shown no qualification whatever. In further examination along this line as to her qualifications, she says, "I have no knowledge except what I told you." When asked what the fair and reasonable charge for mending and washing was, she answered: "I don't know,— I never kept a boarding house."

While the rule is rather liberal as to the qualification of a witness testifying to the value of services, we are not disposed to go any further than we have heretofore gone on this question. We feel that she was not shown to be qualified, and the court erred in admitting her testimony.

Another of the questions involved in this controversy is whether or not there was such a hiatus in this alleged account that it could not be said to be a continuous open account. Evi-

2. TRIAL: instructions: improper assumption of fact.

dence was introduced on this subject pro and con. Hence it became a very material question whether or not it was a continuous open account. On this subject the court gave the following instruction:

"10. The claim, or cause of action sued on, would be barred by the statute of limitations only at the expiration of five years

after the cause of action accrued. While this cause of action or claim sued on began, and some of it came into existence, as alleged in the claim, more than five years prior to the commencement of the action, it is what the law terms an open, current, or running account, and the cause of action thereon accrues at the date of the last item in the account, and the statute of limitations begins to run only from that date, and the account would not be barred by the statute until five years thereafter.''

In view of the fact that one of the contested questions in the case was whether or not this was in fact an open, current, and running account, the court had no right to tell the jury in this summary manner that it was such an account. It should have explained the meaning of these terms, and left it to the jury to say whether or not it was such an account.

A further part of this same instruction tells the jury that, if the evidence satisfies their minds that the deceased told the plaintiffs, or either of them, that they would get their pay for such services as they performed for him, out of his estate, then the claim for services was not due until his death, and the statute of limitations would not begin to run, etc. It was error to give this part of the instruction, because there was no evidence whatever in the record on which to base the same.

3. TRIAL: instructions: unsupported issue.

Objection is also lodged against Instruction 8, which reads as follows:

''If you find from the evidence that the deceased told the plaintiffs, or one of them, that he would see that they were paid for their services, or that they would get pay for their services, then this would rebut any presumption of voluntary or gratuitous service, and you would be warranted in finding that plaintiffs, at the time the services were rendered, expected compensation therefor, and that deceased expected to make compensation therefor.''

4. WORK AND LABOR: family relations: compensation.

This instruction is erroneous, for the reason that no such deduction is permissible from the statement by the deceased. Such statement on his part is sufficient warrant for the deduction that deceased expected to make compensation, but it cannot logically be deduced therefrom that this statement on his part is evidence that the claimants expected compensation. It does

not necessarily follow, because he may have said that at some time he would see that they were paid, or that he would pay for their services, that this would rebut any presumption of voluntary or gratuitous service. It might be taken into consideration in determining such matter, but, if such question were in the case, it is too strong to state that it would rebut such presumption.

The court, in Instruction 6, elaborates the theory of the law governing liability for services when rendered to a member of the family, and later tells the jury, in substance, that, as a matter of law, there is no evidence establishing or tending to establish that the plaintiffs were members of the family of the deceased, or that the deceased was a member of the family of the plaintiffs. Having held this as a matter of law, while the court had the right to tell the jury that there was no evidence to submit this issue to the jury, there was no call for this elaborate instruction. Instructions should be simple, and should not attempt to elaborate on questions which are not submitted to. the jury, as they tend to confuse the mind of the average juryman, who, being unacquainted with the law, is unable to distinguish between those matters which are of material importance and those which are not.

5. TRIAL: instructions: undue elaboration on nonsubmitted issues.

While numerous other errors are assigned, the probability is that they will not arise on a retrial of the case, and therefore no further attention is given to them.—*Reversed.*

FAVILLE, C. J., and EVANS and MORLING, JJ., concur.