HAROLD SMITH, Appellee, v. STANDARD OIL COMPANY, Appellant.

No. 42383.

JUNE 23, 1934.

REHEARING DENIED SEPTEMBER 20, 1934.

Swisher, Swisher & Cohrt, for appellant.

D. D. Murphy & Son, for appellee.

KINTZINGER, J.—The record in this case shows that Earl Tranor and R. R. Seiberts, representing the defendant company, entered into an oral agreement with the plaintiff, under which he was to procure a lot in Elkader and construct an oil station thereon. Said representatives orally agreed that the defendant would lease said premises from plaintiff at $30 per month for five years, and $40 per month for the second five years, giving plaintiff the exclusive sale of defendant's products in East Elkader, Iowa, for ten years, and allow plaintiff the commissions usually allowed agents of like

stations for the sale of its products. Plaintiff alleges that he procured a suitable lot for an oil station as agreed upon, and that thereafter the defendant refused to carry out the terms of a purported lease, or co-operate in the construction of the station. Plaintiff claims that his monthly net income from such station would be about $200 per month. Plaintiff alleges that he procured a lot from Clayton county, and entered into the following written contract for the purchase thereof:

"This contract, made this 24th day of June, 1931, by and between Harold Smith, party of the first part, and the Board of Supervisors of said Clayton County, Iowa, party of the second part:

"Witnesseth: That the said party of the first part contracts and agrees to and with the party of the second part, to pay * * * $900.00 for a parcel of ground 75 feet deep and a frontage of 150 feet along the Elkader-McGregor highway, said tract being located in and being a part of Lot 2, of Lot 1, of the NE¼ of Section 23, Township 93, Range 5, West of the 5th P. M. and party of the second part hereby agree to deliver a Warranty Deed for the above mentioned parcel of ground upon the payment of the above mentioned sum.

"Payment of the sum of $10.00 is hereby acknowledged, the balance of the purchase price to be paid at the time of the delivery of the deed. * * *

> "[Signed]  Harold Smith,
>    "Party of the first part,
> "[Signed]   H. D. Campbell,
>    "Act. Chairman,
>    "Board of Supervisors."

This contract was signed only by "H. D. Campbell, Acting Chairman, Board of Supervisors."

The record shows that no official proceedings whatever were taken by the board of supervisors with reference to the sale of said lot to the plaintiff. It fails to show that the board of supervisors at any time in June, 1931, or at any time thereafter, took any action by the adoption of any resolution, or otherwise in reference to the sale, or contract for the sale, of the lot in question to the plaintiff. It also fails to show that any authority was ever given to H. D. Campbell to enter into the purported contract, and also fails to show that the board of supervisors ever authorized, confirmed, or

ratified his action in any manner. Mr. Campbell, the person signing the purported agreement, testified that the board of supervisors was not in session at the time he signed it, and that no resolution was ever adopted or passed by the board of supervisors with respect thereto.

Plaintiff also claims that a lease was entered into between plaintiff and the defendant, but that the defendant, after the preliminary agreement hereinabove referred to, refused to carry out the terms of its agreement or the terms of the lease, alleged to have been entered into. Certain evidence was introduced tending to show plaintiff's damage by loss of profits. At the conclusion of the evidence defendant made a motion for a directed verdict in its favor, which was overruled. The case was submitted to a jury upon instructions, some of which were excepted to by the defendant. The jury returned a verdict in favor of plaintiff in the sum of $1,286. Judgment was entered thereon, and defendant appeals.

██ I. Appellant contends that the court erred in giving instructions No. 4, No. 5, and No. 7 on the measure of damages.

In instruction No. 4 the court said:

"If your verdict is for the plaintiff you are instructed that you have a right in determining the damages of plaintiff to consider all of the facts and circumstances surrounding the transaction, *and further, such reasonable and fair profits as plaintiff might reasonably have realized from such contract* and which were at the time in the contemplation of the parties to the contract." (Italics ours.)

In instruction No. 5 the court says:

"You are further instructed that in the determination of profits you will base your conclusion only upon such facts and circumstances as would lead a fair minded person to a reasonable and fair conclusion as to the amount thereof."

In instruction No. 7 the court says:

"You are further instructed that in considering the damage to plaintiff, * * * you have a right to determine the reasonable and fair profits plaintiff would have made by reason of such leasing contract."

The complaint made against each of these instructions is that the finding of the jury in respect to profits is not limited to such

profits as are established by the evidence in the case. We have repeatedly held that in considering any essential proposition necessary to be established in a case, the finding of a jury thereon must be limited to the evidence offered at the trial in support thereof. In the instructions given, the jury is not limited to the evidence offered in the case, in determining the measure of damages. When the court tells the jury that in arriving at their verdict they shall "further" take into consideration "such reasonable and fair profits as plaintiff might reasonably have realized from such contract" and to base their "conclusion * * * upon such facts and circumstances as would lead a fair minded person to a reasonable and fair conclusion as to the amount thereof," it opens too wide a field of speculation for the determination of that question by the jury. They are thereby permitted to wander far afield from the evidence introduced. Such instructions have been repeatedly condemned by this court and for that reason must be held erroneous. Ryan v. Trenkle, 203 Iowa 443, 212 N. W. 888; Millard v. Northwestern Mfg. Co., 200 Iowa 1063, 205 N. W. 979; Seddon v. Richardson, 200 Iowa 763, 205 N. W. 307; Dunnegan & Briggs v. C., R. I. & P. R. Co., 202 Iowa 787, 211 N. W. 364; Looney v. Parker, 210 Iowa 85, 230 N. W. 570; Balik v. Flacker, 212 Iowa 1381, 238 N. W. 467.

Instruction No. 7 is also complained of because the court assumes that plaintiff did in fact sustain damages when it says, "You are further instructed that in considering *the damage to plaintiff * * * you have a right to determine* the reasonable and fair profits plaintiff would have made by reason of such leasing contract." The finding of the jury as to the measure of profits is not limited to the damages or profits, *if any, established by the evidence in the case.* Such an instruction is too broad. It should have been limited to the damages as shown by the evidence, and to those set out in plaintiff's petition. Balik v. Flacker, 212 Iowa 1381, 238 N. W. 467; Seddon v. Richardson, 200 Iowa 763, 205 N. W. 307; Turkington v. C., R. I. & P. R. Co., 196 Iowa 304, 194 N. W. 75; Passcuzzi v. Pierce, 208 Iowa 1389, 227 N. W. 409; Wells v. Chamberlain, 185 Iowa 264, 168 N. W. 238; Napper v. Young, 12 Iowa 450.

II. At the close of the evidence the defendant moved the court for a directed verdict on various grounds, one of which was "that the evidence affirmatively shows that the plaintiff had no valid contract of purchase or option * * * for the purchase of the lot * * * claimed to have been purchased * * * from Clayton

county, and that * * * the alleged contract of purchase is of no validity."

It is contended that the first requisite necessary as a foundation for his claim is to show that he carried out his verbal agreement *to procure a lot* upon which to build the contemplated oil station. If he has no valid contract for the purchase of the lot, then he was not in a position to carry out his agreement. In order to procure a title to, or an option for, the purchase of a lot owned by the county, it was necessary to secure the authority therefor in the manner provided by statute. It is true there was introduced in evidence a purported agreement for the purchase of the lot from Clayton county. The purported agreement, however, is signed only by H. D. Campbell, *acting chairman of the board of supervisors,* and not by the county. The evidence shows that there was no official action taken by the board of supervisors at the time in question, or at any other time, authorizing the sale of the lot to the plaintiff. The undisputed evidence shows that no resolution therefor was ever adopted by the board of supervisors. Section 5121 of the Code provides as follows:

"No tax shall be levied * * * no real estate purchased or sold * * * without a majority of the whole board of supervisors voting therefor and consenting thereto."

Code, section 10254, provides:

"When a county holds * * * real estate, it shall be controlled, managed, and sold by the board of supervisors."

It also has power to sell real estate for such price and upon such terms as it deems best and take part of the purchase price in cash and a mortgage or other security for the balance. Code, section 10256.

Code section 10257, provides:

"Any such * * * sale shall be made by resolution in writing, regularly adopted by said board, and spread upon its minutes, with the yea and nay vote by which the same was adopted, and the date thereof; such resolution shall show the price paid for such real estate in case of sale * * * and give the description thereof."

Such resolution is deemed a conveyance. Section 10258.

The record shows without conflict that no action whatever was

taken by the board of supervisors at any regular or special meeting. It also shows that the purported agreement, called "Exhibit A," was not signed while the board was in session. Although there was some talk among the members about taking action at the next session of the board, there is no testimony tending to show that the board at the next regular session, or at any other session, took any action confirming the purported agreement signed by H. D. Campbell, acting chairman. No contract for the sale of said property was ever entered into between the board of supervisors of Clayton county and the plaintiff, and no resolution providing for the sale thereof was ever adopted by the board. No such action having been taken, the first prerequisite upon which plaintiff's action is based has not been established. Having failed to secure an agreement for the sale of said property from the board of supervisors, it necessarily follows that plaintiff has failed *to procure a lot* for the erection of the oil station, as contemplated in the oral agreement. The defendant's motion for a directed verdict should therefore have been sustained.

Other errors are assigned, but a consideration of them is unnecessary.

For the reasons hereinabove pointed out, the judgment of the lower court is hereby reversed.

All Justices concur.